IN RE: THE FORECLOSURE OF A DEED OF TRUST OF JAMIE ESPINOSA AND
WIFE, CHERI ESPINOSA v. HAYES MARTIN, TRUSTEE AND ROBERT TUCKER,
SUBSTITUTE TRUSTEE

No. COA98-1491

(Filed 19 October 1999)

**1. Mortgages— power of sale—real property—no valid debt—
no ratification**

In an action for foreclosure under power of sale of plaintiffs'
real property based on a loan taken out by plaintiff-wife's father
purportedly signed by plaintiffs and the father, the trial court did
not err in dismissing the foreclosure proceeding based on its
determination that there was no valid debt owed by plaintiffs to
the bank and plaintiffs did not ratify the loan because there is no
evidence that: (1) any portion of the loan proceeds passed to
plaintiffs directly or indirectly; (2) plaintiffs knew of the loan
transactions until the foreclosure was instituted; (3) plaintiff-
wife's father acted as an agent of plaintiffs in obtaining the loan
secured by their real property; or (4) any of plaintiffs' legal obli-
gations were satisfied from the loan proceeds.

**2. Mortgages— power of sale—real property—equitable
relief beyond scope of review**

In an action for foreclosure under power of sale of plaintiffs'
real property based on a loan taken out by plaintiff-wife's father
purportedly signed by plaintiffs and the father without their
knowledge, the trial court did not err in declining to address
unnamed defendant Bank's argument for equitable relief be-
cause that action would have exceeded the trial court's permissi-
ble scope of review in this foreclosure action since a power of
sale is limited to the four findings of fact specified in N.C.G.S.
§ 45-21.16(d).

Appeal by petitioner Blue Ridge Savings Bank, Inc., from order
entered 12 June 1998 by Judge J. Marlene Hyatt in Jackson County
Superior Court. Heard in the Court of Appeals 9 September 1999.

This action for foreclosure under power of sale of certain real property in Jackson County, North Carolina, was heard in Jackson County Superior Court upon appeal from an Order of the Clerk of Superior Court of Jackson County.

Cheri Cagle Espinosa is the daughter of Charles E. Cagle, and is married to Jamie Espinosa (collectively, the Espinosas). On or about 3 March 1993, a loan application purporting to be signed by the Espinosas was submitted to Blue Ridge Savings Bank, Inc. (the Bank). On 5 March 1993, Teri C. Jenkinson and Carl M. Jenkinson deeded certain real property to the Espinosas (the Jenkinson property). Teri Jenkinson is the sister of Cheri Espinosa. On 11 March 1993, a Promissory Note was executed bearing the names of the Espinosas in favor of the Bank in the principal sum of $280,000.00. The promissory note was secured by a deed of trust on the Jenkinson property in which Hayes C. Martin (Martin) was designated as trustee for the Bank. Martin was President of the Bank and a long-time friend of Mr. Cagle. On the same day, the closing attorney issued a check from his trust account made payable to the Espinosas in the amount of $278,364.00 with the notation "net proceeds from loan Blue Ridge Savings Bank." The signatures of Jamie Espinosa, Cheri Espinosa and Charles Cagle appear on the check as endorsers. There is some evidence that Charles Cagle deposited the trust account check into his account at First Union National Bank.

A second undated loan application was thereafter submitted to the Bank, bearing the signatures "Jessie Espinosa" as borrower and "Cheri Espinosa" as co-borrower. On or about 21 January 1994, Charles E. Cagle and his wife conveyed additional real property (the Cagle property) to the Espinosas. On that same day, a second promissory note was signed in the names of the Espinosas in favor of the Bank in the sum of $467,000.00. The sum of $467,000.00 represented the total of the 11 March 1993 loan of $280,000.00 and a new loan in the amount of $187,000.00. The $467,000.00 promissory note was secured by a deed of trust on the Jenkinson property and the Cagle property, bearing the names of Jamie Espinosa and Cheri Espinosa, with Hayes C. Martin designated as trustee for the Bank. On or about 21 January 1994, the Bank issued a check signed by Hayes C. Martin to "Thomas W. Jones, Attorney Trust Account," in the sum of $187,000.00, representing the "new money" from the loan. The check was endorsed: "Thomas W. Jones Trust Account: By: Thomas W. Jones, and Charles E. Cagle." On or about 24 November 1995, a loan modification agreement purporting to bear the signa-

tures of Jamie Espinosa and Cheri Espinosa, extended the term of the loan.

At trial, there was ample evidence, including the testimony of a handwriting expert, tending to show that none of the loan documents, including the modification agreement, were signed or submitted to the Bank by the Espinosas. There was no evidence that the Espinosas received any of the proceeds from either loan, no evidence that Hayes C. Martin ever talked with the Espinosas at any time about the loans, and no evidence that the Espinosas received, directly or indirectly, any portion of the loan proceeds. There is also no evidence that the Espinosas knew about the loan transactions at any time prior to the institution of this foreclosure action. Martin apparently had accepted the representations of his friend Cagle that the documents were properly signed by the Espinosas and notarized.

There was evidence that Mrs. Espinosa received a loan delinquency notice from Blue Ridge Savings Bank in the fall of 1996. She testified she had never previously heard of Blue Ridge Savings Bank. Upon receiving the notice, Mrs. Espinosa contacted her father, Mr. Cagle, who said he would rectify the situation. At her father's request, she faxed and mailed copies of her tax returns to Bob Long, her father's attorney. She had not received any further communications from the Bank until she was served with notice of the foreclosure proceeding.

The Bank instituted a foreclosure proceeding and served the Espinosas with process. Charles Cagle was not made a party to the proceeding. After a full hearing, the clerk of superior court determined the Espinosas were not responsible for the outstanding debt to the Bank, and entered an order dated 25 November 1997 staying the foreclosure proceeding. The Bank appealed to the Superior Court of Jackson County. After a full hearing, the superior court entered an order determining that there was no valid debt owed the Bank by the Espinosas, and dismissed the foreclosure proceeding. The Bank appealed, assigning error.

*John R. Sutton for Blue Ridge Savings Bank, Inc., petitioner appellant.*

*Hunter, Large & Sherrill, P.L.L.C., by Raymond D. Large, Jr. and Diane E. Sherrill, for Jamie Espinosa and wife, Cheri Espinosa, respondent appellees.*

HORTON, Judge.

An action for foreclosure under power of sale provides an alternative to "costly and . . . time-consuming . . . foreclosure[s] by action . . . ." *In re Watts*, 38 N.C. App. 90, 94, 247 S.E.2d 427, 429 (1978). At the initial hearing before the clerk of superior court, the clerk is to "find the existence of a '(i) valid debt of which the party seeking to foreclose is the holder, (ii) default, (iii) right to foreclose under the instrument, and (iv) notice to those entitled . . . .' " *Id.* at 93, 247 S.E.2d at 429. *See also* N.C. Gen. Stat. § 45-21.16(d) (1996). The role of the clerk is limited to making findings on those four issues. If the foreclosure action is appealed to the superior court for a *de novo* hearing, the inquiry before a judge of superior court is also limited to the same issues. *Id.* at 94, 247 S.E.2d at 429.

Here, the issue before the superior court on appeal was whether there was a "valid debt" of which the Bank, was the holder. The superior court found that Jamie Espinosa and Cheri Cagle Espinosa did not execute any of the loan documents in question, including the promissory notes. None of the parties to this appeal disagree with that finding, appellant Bank contending that Charles E. Cagle, father of Cheri Cagle Espinosa, forged the signatures of the Espinosas in order to secure the loans in question. We note that the superior court did not make a finding as to the identity of the forger of the loan documents, that question not being relevant to the limited issues before that court on appeal. Even if we assume for the purposes of argument that Cheri Espinosa's father, Charles E. Cagle, forged the instruments in question, our reasoning and decision would remain the same.

[1] The Bank argues, however, that even if the Espinosas did not participate in the loan transactions, they ratified the loan transactions by retaining the benefits of those transactions after learning that their signatures had been forged on the loan documents. We disagree, and affirm the judgment of the superior court.

We have defined ratification as

"the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him." Restatement (Second) of Agency § 82 (1958). "Ratification requires intent to ratify plus full knowledge of all the material facts." Contracting Corp. v. Bank of New Jersey, 69

N.J. 352, 361, 354 A.2d 291, 296 (1976). It "may be express or implied, and intent may be inferred from failure to repudiate an unauthorized act . . . or from conduct on the part of the principal which is inconsistent with any other position than intent to adopt the act." *Id.*

*American Travel Corp. v. Central Carolina Bank,* 57 N.C. App. 437, 442, 291 S.E.2d 892, 895, *disc. review denied,* 306 N.C. 555, 294 S.E.2d 369 (1982).

"[T]o constitute ratification as a matter of law, the conduct must be consistent with an intent to affirm the unauthorized act and inconsistent with any other purpose." *Id.* at 443, 291 S.E.2d at 896. The superior court found no evidence that any portion of the loan proceeds passed to the Espinosas, or that they knew of the loan transactions until the foreclosure was instituted and those findings are supported by competent evidence. Further, there was no evidence that Charles E. Cagle acted as agent of the Espinosas in obtaining the loan secured by their real property, and no evidence that any legal obligation of the Espinosas was satisfied from the loan proceeds. Further, the trial court found that none of the loan proceeds were used to purchase the real property deeded to the Espinosas, and that they did not directly or indirectly benefit from the loan transactions in any way. Those additional findings are also supported by competent evidence of record. The trial court concluded that the Bank failed to prove by the greater weight of the evidence that "Jaime [*sic*] and Cheri Espinosa, or either of them, knew all of the facts material to the loans in question prior to the time of the institution of this foreclosure proceeding." Further, the trial court concluded that the Espinosas "did not ratify any of the transactions or documents associated with the loans in question."

The Bank contends that as a matter of law the Espinosas ratified the loan transactions by retaining the Jenkinson and Cagle properties after they learned that their signatures had been forged on the loan transactions. The Bank bases its contention on the decision of our Supreme Court in *O'Grady v. Bank,* 296 N.C. 212, 250 S.E.2d 587 (1978). In *O'Grady,* one Pridemore had a power of attorney given him by Stewart. Based on that power of attorney, Pridemore signed Stewart's name to a promissory note. The Supreme Court held that Pridemore's action exceeded his authority as set out in the power of attorney, thus Stewart's signature on the note was clearly unauthorized. However, the case was remanded to the trial court to determine whether Stewart ratified the unauthorized actions of Pridemore by

(1) taking control of bank accounts containing a portion of the loan proceeds, (2) with knowledge of the source of funds in the bank accounts, and (3) with knowledge that his name had been signed on the promissory note by Pridemore. *Id.* at 235-36, 250 S.E.2d at 602. The present case is clearly distinguishable from *O'Grady.* Here, there is no finding that Charles E. Cagle, or anyone else, acted as an agent for the Espinosas in the loan transactions; nor that they received, directly or indirectly, any of the loan proceeds; nor that they had any knowledge that anyone had signed their names on the loan documents until the foreclosure proceeding was instituted against them. *O'Grady* is clearly factually distinguishable, and does not support the Bank's argument.

We have carefully examined the other authorities cited by the Bank, but find that those cases involve principal-agent relationships and the liability of a principal for unauthorized acts of its agent. *Bank v. Grove,* 202 N.C. 143, 162 S.E. 204 (1932) (agent borrowed money on behalf of his principal without authority, but agent used it to satisfy legal obligations of his principal; principal retained the benefit of those payments and was deemed to have ratified the acts of the agent); *Christian v. Yarborough,* 124 N.C. 72, 32 S.E. 383 (1899) (where agent exceeds his authority, principal must either ratify the whole transaction, or repudiate the whole; may not merely ratify the portions to his advantage). Here, the trial court found no evidence of any principal-agent relationship, either actual or implied, between the Espinosas and Charles E. Cagle.

[2] Finally, the Bank argues that it would be grossly inequitable to allow the Espinosas to retain the land free of any obligation for the loan in question. That question was not properly before either the clerk or the trial court in this foreclosure proceeding, and therefore is not before us on appeal. In *Watts,* the mortgagors successfully raised an equitable defense in a foreclosure proceeding before the superior court, but we reversed the action of the superior court on appeal. We noted that

> [a] power of sale provision in a deed of trust is a means of avoiding lengthy and costly foreclosures by action. 389 F. Supp. at 1258; 10 Thompson on Real Property, § 5175, p. 204 (1957); Note, Power of Sale Foreclosure After Fuentes, 40 U. Chi. L. Rev. 206 (1972). To construe the statute so as to provide a full hearing on matters at issue other than those before the Clerk would make the foreclosure by power of sale as costly and as time-consuming

ESPINOSA v. MARTIN

[135 N.C. App. 305 (1999)]

as foreclosure by action, since a mortgagor could obtain a full hearing on all issues merely by appealing to the Superior Court for a hearing *de novo*. It is clear that the legislature did not intend such a result. The Clerk of Superior Court is limited to making the four findings of fact specified in the statute, and it follows that the Superior Court Judge is similarly limited in the hearing *de novo*. *See* G.S. 1-276 which limits appeals to "matters in controversy" before the Clerk.

\* \* \* \*

The trial judge in the case *sub judice* exceeded the permissible scope of review at the hearing *de novo* by invoking equitable jurisdiction to enjoin the foreclosure sale.

*Watts*, 38 N.C. App. at 94-95, 247 S.E.2d at 429-30. In the case before us, the superior court correctly declined to address the Bank's argument for equitable relief, as such an action would have exceeded the superior court's permissible scope of review in this foreclosure action.

We have carefully reviewed the other arguments and assignments of error brought forward by the Bank, but find them to be without merit. Despite its contentions to the contrary, the Bank received a fair and impartial hearing before an able trial court. The findings made by the trial court are supported by competent evidence, and the conclusions of law are supported by the findings and correctly apply applicable statutes and case law. Accordingly, the judgment of the superior court is

Affirmed.

Judges GREENE and TIMMONS-GOODSON concur.