IN RE HUDSON

[182 N.C. App. 499 (2007)]

IN RE: WILL A. HUDSON AND BETTY H. HUDSON, FORECLOSURE OF DEED OF TRUST DATED JUNE 27, 1996, RECORDED IN BOOK 7056, AT PAGE 260, IN THE WAKE COUNTY REGISTRY

No. COA06-345

(Filed 3 April 2007)

**Mortgages and Deeds of Trust— foreclosure—description of property**

The trial court did not err by dismissing a petition to foreclose where the deed did not include a description of the real property at the time of execution, and such description was later added to the deed without respondents' consent or knowledge. The trial judge did not exceed his authority by examining the underlying validity of the loan documents and properly concluded as a matter of law that the debt claimed by the lender/creditor was not valid. Petitioner provides no legal authority for the assertion that a deed lacking legal descriptions of the real property to be conveyed can be cured unilaterally by recording the deed with novel legal descriptions unseen by the other party.

Appeal by petitioner from judgment entered 2 September 2005 by Judge Wade Barber in Wake County Superior Court. Heard in the Court of Appeals 6 December 2006.

*Roberson Haworth & Reese, P.L.L.C., by Alan B. Powell and Christopher C. Finan, for the petitioner-appellant.*

*Lane & Brannon, P.L.L.C., by Anthony M. Brannon, Esq., for the respondent-appellee.*

ELMORE, Judge.

On 27 June 1996, Will A. Hudson and Betty H. Hudson (respondents) entered into an agreement with Transamerica Financial Services (Transamerica) whereby Transamerica loaned the principal sum of $232,610.96 to respondents. Transamerica was succeeded in interest by Beneficial Mortgage Company of North America (Beneficial). We refer to Transamerica and Beneficial as "petitioner." Respondents executed a promissory note stating that the loan was secured by certain real estate, and also executed a deed of trust securing the loan with certain real estate listed on an attachment to

the deed of trust, "Attachment A." The collateral listed on the promissory note includes four addresses in typeface and four that are handwritten. The face of the note reads, "THIS LOAN IS SECURED BY . . . Real estate located at the following address: 104 & 106 Lord Anson Dr. Raleigh, NC 27610, 1212 Angelus Dr. Raleigh, NC 27601, 3525 Edington Ln. Raleigh, NC 27604, *714, 716, 722 & 724 Woodland Rd.*" (Italics indicate handwritten portion). Attachment A to the deed includes the following descriptions of six parcels:

PARCEL I: Being all of Lot 10, Block A, Section 2, of Echo Heights as recorded in Book of Maps 1955, Page 113, Wake County Registry.

Tax Map No.: 680-0458

PARCEL II: Being all of Lot 12, Block A Section 2, of Echo Heights as recorded in Book of Maps 1955, Page 113, Wake County Registry.

Tax Map No.: 680-0460

PARCEL III: Being all of Lot 139, Fisher Heights Subdivision, as shown on map entitled "Fisher Heights", as recorded in Book of Maps 1920, Volume 3, Page 178, Wake County Registry. Together with improvements located thereon; said property being located at 104 Lord Anson Drive, Raleigh, NC.

PARCEL IV: Being all of Lot 10 of Brown-Birch Apartments as depicted in Book of Maps 1985, Page 1148, Wake County Registry. 1212 Angelus Drive Raleigh, North Carolina.

PARCEL V: BEING ALL OF Lots 140 and Part of Lot 141, Fisher Heights Subdivision, as shown on plat recorded in Book of Maps 1990, page 154, Wake County Registry. Said plat is a recombination of Lots 140 and Part of Lot 141 as shown in plat recorded in Book of Maps 1920, Page 178, Wake County Registry to which reference is also made. Together with improvements located thereon; said property being located at 106 Lord Anson Drive, Raleigh, North Carolina.

PARCEL VI: BEING all of Lot 83, Foxcroft Subdivision, Section 3, as recorded in Book of Maps 1971, Page 496, Wake County Registry.

Mr. Hudson testified that at the real estate closing for this transaction he did not execute any documents that included the "Wood-

land Road properties as security interest for the loan." The deed of trust that he signed did not include an Attachment A, and the Hudsons had never contemplated or discussed using the Woodland Road properties as security interest. Those properties were sold one month later, as the Hudsons had anticipated at the time of the transaction. Mr. Hudson testified that he "was not given any documents at closing. [He] received them maybe two to three weeks later in mail. [He] should have been given documents, but [he] was not given documents." Mr. Hudson further testified that the note he signed "had [the] prepayment notice struck out and [was] initialed by the loan officer. The Woodland Road properties were not included at the time of closing. They were added later without my consent or knowledge." He then stated that the deed of trust offered by petitioner was not "what [he] signed and does not bear [his] signature."

After selling the Woodland Road properties, respondents made a payment of $47,000.00 or $49,000.00 on their loan. Respondents, while reviewing the annual statement that "reflect[ed] how much money ha[d] been applied to principal and how much money ha[d] been applied to interest," discovered that the bulk of their payments had been applied to a prepayment penalty. Alarmed, "from that day on, [Mr. Hudson has] been writing, calling, faxing, to no avail." Respondents sent a number of letters and faxes to petitioner requesting copies of the loan documents as well as explanations for petitioner's actions. Respondents eventually received copies of the loan documents and saw that petitioner's documents were not the ones that respondents had signed. Respondents' various attempts to contact petitioner in order to clear up the discrepancy went largely without response.

On 20 July 2004, petitioner advised respondents that they had defaulted under the terms of their lending agreement, and that failure to cure would result in acceleration of the loan and eventual foreclosure. Respondents sent a letter to petitioner demanding that the note and deed be cancelled, and their monies refunded, because the note and deed of trust that petitioner sought to foreclose upon were not those signed by respondents. No response from petitioner appears in the record.

Respondents did not pay the arrears, and petitioner initiated foreclosure proceedings on the six properties listed on Attachment A of the note. A foreclosure hearing was held before the Clerk of Superior Court for Wake County, pursuant to N.C. Gen. Stat. § 45-21.16(d), as provided under the power of sale provision in the deed of trust. On 31

May 2005, the clerk issued an order declaring that petitioner could foreclose on the properties on Lord Anson Drive, Angelus Drive, and Edington Lane. In that same order, the clerk declared that with respect to the Woodland Road properties, "the Debtors have demonstrated a valid legal reason why foreclosure should not proceed." Respondents appealed the clerk's order to the Wake County Superior Court, pursuant to N.C. Gen. Stat. § 45-21.16(d1).

On 25 August 2005, the Wake County Superior Court issued an order dismissing petitioner's petition to foreclose on all of the properties. It is from this dismissal that petitioner appeals.

Petitioner first avers that the trial court erred by disallowing petitioner's foreclosure because the deed of trust satisfies all requirements of the Statute of Frauds and the substitute trustee presented competent evidence sufficient to satisfy the four findings required under General Statutes section 45-21.16(d). The statute states, in relevant part:

> (d) . . . the clerk shall consider the evidence of the parties and may consider, in addition to other forms of evidence required or permitted by law, affidavits and certified copies of documents. If the clerk finds the existence of (i) valid debt of which the party seeking to foreclose is the holder, (ii) default, (iii) right to foreclose under the instrument, and (iv) notice to those entitled to such under subsection (b), then the clerk shall authorize the mortgagee or trustee to proceed under the instrument . . . .

> (d1) The act of the clerk in so finding or refusing to so find is a judicial act and may be appealed to the judge of the district or superior court having jurisdiction at time within 10 days after said act. Appeals from said act of the clerk shall be heard de novo.

N.C. Gen. Stat. § 45-21.16 (2005).

"The role of the clerk is limited to making findings on those four issues. If the foreclosure action is appealed to the superior court for a *de novo* hearing, the inquiry before a judge of superior court is also limited to the same issues." *Espinosa v. Martin*, 135 N.C. App. 305, 308, 520 S.E.2d 108, 111 (1999) (citing *In re Watts*, 38 N.C. App. 90, 94, 247 S.E.2d 427, 429 (1978)). Furthermore, the trial court may not hear equitable defenses, although evidence of legal defenses is permissible. *In re Foreclosure of Azalea Garden Bd. & Care, Inc.*, 140 N.C. App. 45, 57, 535 S.E.2d 388, 396 (2000).

Petitioner argues that by considering respondents' evidence of petitioner's alleged fraudulent acts, and then making findings and conclusions of law in relation to those acts, "the trial judge exceeded both his statutory jurisdiction and the scope of inquiry permitted in the context of a hearing conducted pursuant to N.C. Gen. Stat. § 45-21.16 by invoking equitable jurisdiction." We disagree. Our Supreme Court has held "that determining which property is legally secured by a deed of trust is a proper issue and element of proof before the Clerk of Superior Court. Therefore, if a party contends that the property is not secured," as petitioners here do, "then such contention may be raised as a defense to the four requisite findings under N.C.G.S. § 45-21.16(d)." *In re Foreclosure of Michael Weinman Associates*, 333 N.C. 221, 228, 424 S.E.2d 385, 389 (1993). Additionally, this Court has specifically held that the forgery of loan documents is a proper legal defense to a lender's assertion that a "valid debt" exists. *Espinosa*, 135 N.C. App. at 308, 520 S.E.2d 108 at 111. Thus, the trial judge did not exceed his authority by examining the underlying validity of the loan documents. As we held in *Espinosa*, such inquiry relates to the finding of a "valid debt" under General Statutes section 45-21.16. The trial judge properly concluded as a matter of law that "the debt claimed by the lender/creditor pursuant to this Note is not valid."

Petitioner further objects to the trial judge's conclusion that "[s]ince the Deed of Trust executed by Will and Betty Hudson contained no description of real property, it does not meet the provisions of the Statute of Frauds and is void." The Statute of Frauds, as codified in our General Statutes, requires that "[a]ll contracts to sell or convey any lands . . . shall be void unless said contract, or some memorandum or note thereof, be put in writing and signed by the party to be charged therewith . . . ." N.C. Gen. Stat. § 22-2 (2005). "The writing must contain a description of the land, the subject matter of the contract, either certain in itself or capable of being reduced to certainty by something extrinsic to which the contract refers." *Bradshaw v. McElroy*, 62 N.C. App. 515, 516, 302 S.E.2d 908, 910 (1983) (citing *Lane v. Coe*, 262 N.C. 8, 12, 136 S.E.2d 269, 273 (1964)). Here, the deed did not include a description of the real property at the time of execution, and such description was later added to the deed without respondents' consent or knowledge. Petitioner argues that respondents intended to convey, at a minimum, four parcels of land as security for their loan, and that such intent is sufficient to satisfy the Statute of Frauds. We disagree.

Petitioner correctly asserts that respondents intended to convey some real property as security for their loan, and that the deed as recorded includes the missing legal descriptions of the property. However, petitioner provides no legal authority for its assertion that a deed lacking legal descriptions of the real property to be conveyed can be cured unilaterally by recording said deed with novel legal descriptions unseen by the other party. Instead, petitioner cites to *Board of Transportation v. Pelletier*, 38 N.C. App. 533, 248 S.E.2d 413 (1978), for the proposition that "in construing a recorded deed, deed of trust, or any other conveyance of real property, courts effort to determine the intent of the parties to the instrument from an inspection of the language within the 'four corners' of the recorded instrument itself." The holding in *Pelletier* does not apply to the issue at hand. In *Pelletier*, the trial judge, who was not conducting a hearing pursuant to N.C. Gen. Stat. § 45-21.16, had before him an instrument whose validity was not in question. Rather, the judge's sole purpose was to determine who owned a particular parcel of land by construing the deed description. *Id.* at 536-37, 248 S.E.2d at 415. In contrast, the superior court judge in this case had to determine whether foreclosure was proper when the supporting documents themselves were contested.

Although petitioner argues that fraud has no place in a 45-21.16 hearing, and that "[t]he issue of the existence of fraud is properly raised, if at all, only in the context of a separate civil action brought under N.C. Gen. Stat. § 45-21.34," our Supreme Court has held that:

> For reasons of judicial economy and efficient resolution of disputes . . . N.C.G.S. § 45-21.16(d) provides a more appropriate process to resolve who truly is the equitable or legal owner of . . . any property sought to be sold under foreclosure. . . . It would be inefficient and an unnecessarily burdensome requirement for parties to have to file a subsequent action in the superior court to decide whether the land being foreclosed upon is secured by the Deed of Trust after the parties have already appeared before the Clerk of Court. We do not see the Clerk of Court in a preforeclosure hearing performing a mere perfunctory role.

*Weinman*, 333 N.C. at 230, 424 S.E.2d at 390. A superior court judge hearing an appeal from the clerk of court is charged with making the same determinations as the clerk under section 45-21.16, and performs a no more perfunctory role.

Accordingly, we hold that the trial court did not err in dismissing the petition to foreclose.

Affirmed.

Chief Judge MARTIN and Judge McCULLOUGH concur.