**IN RE FORECLOSURE OF RAYNOR**

[229 N.C. App. 12 (2013)]

IN THE MATTER OF THE FORECLOSURE OF A DEED OF TRUST EXECUTED BY
TIMOTHY W. RAYNOR AND NICOLE W. RAYNOR DATED JUNE 12, 2008, RECORDED
IN BOOK 5323, PAGE 2749, NEW HANOVER COUNTY REGISTRY

No. COA12-1116

Filed 20 August 2013

**Mortgages and Deeds of Trust—foreclosure—HAMP regulations—equitable defense—res judicata**

A trial court order concluding that it lacked jurisdiction to hear the homeowners' Home Affordable Modification Program (HAMP) defense in a mortgage foreclosure action was affirmed. Even if the appeal from the clerk was remanded to the superior court for consideration of the homeowners' defense, the superior court would be barred from hearing their argument by *res judicata*.

Appeal by respondents from order entered 8 June 2012 by Judge W. Allen Cobb, Jr. in New Hanover County Superior Court. Heard in the Court of Appeals 13 February 2013.

*The Law Office of John T. Benjamin, Jr., P.A., by John T. Benjamin, Jr. and Taylor T. Haywood, for petitioner-appellee.*

*Shipman & Wright, LLP, by W. Cory Reiss, for respondents-appellants.*

HUNTER JR., Robert N., Judge.

Timothy W. Raynor and Nicole W. Raynor ("Respondents" or "Homeowners") appeal from an Order to Allow Foreclosure Sale permitting the substitute trustee to foreclose under a deed of trust securing a debt held by Wells Fargo Bank, N.A. ("Petitioner" or "the Bank"). On appeal, Homeowners contend that the trial court erred in concluding it lacked subject matter jurisdiction to hear Homeowners' defense to foreclosure. For the following reasons, we affirm.

### I. Factual & Procedural History

On 12 June 2008, the Bank made a loan of $221,777 to Homeowners. The loan was insured by the Federal Housing Administration, an agency under the United States Department of Housing and Urban Development ("HUD"). The loan was secured by Homeowners' residence in Wilmington pursuant to a deed of trust recorded with the New Hanover County Register of Deeds.

Under the note and deed of trust, Homeowners were to make equal monthly installment payments of principal and interest in the amount of $1,329.67 to the Bank beginning on 1 August 2008 and continuing thereafter for 30 years. The note also contained the following provision:

**6. BORROWER'S FAILURE TO PAY**

. . . .

**(B) Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, *except as limited by regulations of the Secretary in the case of payment defaults*, require immediate payment for the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. *In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations.* As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

(Emphasis added.)

In addition, the deed of trust securing the Bank's loan in pertinent part read:

**9. Grounds for Acceleration of Debt.**

**(a) Default.** Lender may, *except as limited by regulations issued by the Secretary*, in the case of payment defaults, require immediate payment in full all sums secured by the security instrument[.]

. . . .

**(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. *The security instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.*

(Emphasis added.)

IN RE FORECLOSURE OF RAYNOR

[229 N.C. App. 12 (2013)]

In October 2009, Homeowners failed to make their required payment under the note. In response, the parties entered into two separate forbearance agreements. The first of these was executed in December 2009. Under this agreement, Homeowners were not required to make any payments to the Bank until April 2010. The second forbearance agreement, entered into in May 2010, required Homeowners to make four monthly payments of $650. Homeowners were able to satisfy the terms of both forbearance agreements. During this time Homeowners applied to the Bank for a loan modification. In a letter sent to Homeowners dated 16 September 2010, the Bank stated that it was "unable to get [Homeowners] to a modified payment amount [they] could afford per the investor guidelines on [their] mortgage."

In December 2010, the Bank sent Homeowners a demand for payment. The demand stated that Homeowners were in default, and gave Homeowners 45 days to cure their default by paying $25,097.54 — the amount past due on the note along with a late payment charge and inspection fee. The Bank also warned Homeowners that it would accelerate the note if Homeowners failed to cure their default. Homeowners failed to cure the default, and the Bank accelerated the note and instructed the trustee to foreclose as provided in the deed of trust. At the request of Homeowners, the Bank again reviewed Homeowners' account, along with financial information provided by Homeowners, but was unable to approve a modification under the federal government's Home Affordable Modification Program ("HAMP") or a traditional loan modification.

After Homeowners' failure to cure their default or pay the balance of the accelerated note, the substitute trustee commenced a special proceeding on 15 February 2011 seeking to exercise the power of sale in the deed of trust. At the same time, the Bank reviewed updated financial documentation submitted by Homeowners in an attempt to once again secure a modification. This time, the Bank was able to approve Homeowners for a traditional loan modification it determined would be affordable for Homeowners based on the updated information they provided. The Bank sent Homeowners loan modification documents on 17 February 2011, and suspended the foreclosure proceeding in light of Homeowners having been approved for the modification. However on 2 March 2011 Homeowners, through counsel, contacted the Bank and rejected the modification offer. Homeowners rejected the offer on the basis that, in their view, they were eligible for a more favorable modification under HAMP. The Bank expressed to Homeowners' counsel its view that Homeowners did not qualify for a HAMP modification, and thereafter resumed efforts to foreclose on the residence.

Homeowners contested the foreclosure at a hearing on 13 February 2012 on the grounds that the Bank failed to offer them a loan modification for which they qualified under the regulations promulgated by the HUD Secretary. The Clerk entered an order permitting foreclosure on 13 February 2012. Homeowners then posted the bond set by the Clerk to stay foreclosure and appealed to the Superior Court for a *de novo* hearing.

Concurrently, Homeowners filed a complaint against the Bank on 12 April 2012 in New Hanover County Superior Court alleging several causes of action, including: (1) unfair and deceptive trade practices on the part of the Bank, (2) fraud, (3) breach of fiduciary duty, (4) negligence, (5) negligent misrepresentation, and (6) breach of contract. Homeowners' complaint also sought a permanent injunction enjoining sale of their residence pursuant to N.C. Gen. Stat. § 45-21.34, on the "legal and equitable grounds" that the Bank failed to offer them a HAMP modification for which they qualified, in violation of federal regulations and the parties' contract.[1] The Bank filed notice of removal of the suit on diversity grounds in the United States District Court for the Eastern District of North Carolina on 16 May 2012.

Shortly thereafter, the superior court heard Homeowners' appeal from the Clerk's decision in the special proceeding. At the hearing Homeowners argued that in light of the language quoted above in the note and deed of trust, the Bank's compliance with HUD regulations

---

1. In recent years, courts throughout the country have seen an increase in suits premised on a lender's alleged failure to comply with the provisions of HAMP. Although the federal courts seem to be in agreement that HAMP itself does not create a freestanding federal cause of action, there appears to be a split of authority with regard to state law claims premised on a lender's failure to comply with HAMP's provisions. The Fourth Circuit has recently noted, consistent with the position of the Seventh Circuit, that the fact that HAMP violations are not themselves actionable in no way abrogates state law causes of action premised on a lender's failure to comply with HAMP. *See Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 776 n.4 (4th Cir. 2013) ("Appellants repeatedly acknowledge that they have no federal claims under HAMP . . . . They also contend, correctly, that the mere fact that HAMP does not provide a private right of action does not mean that all state law claims affiliated with or related to an unsuccessful HAMP application are necessarily preempted."); *see also Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 581 (7th Cir. 2012) ("The absence of a private right of action from a federal statute provides no reason to dismiss a claim under a state law just because it refers to or incorporates some element of the federal law."). The Eleventh Circuit has reached the opposite conclusion, holding that because HAMP fails to create a private cause of action, plaintiffs lack standing to pursue state law claims premised on a lender's failure to comply with HAMP. *See Miller v. Chase Home Finance, LLC*, 677 F.3d 1113, 1116–17 (11th Cir. 2012) ("[Plaintiff] lacks standing to pursue his breach of contract, breach of implied duty of good faith and fair dealing, and promissory estoppel claims insofar as they are premised on an alleged breach of Chase's HAMP obligations."). This split may ultimately be resolved by the United States Supreme Court.

were contractual conditions precedent to the Bank's right to foreclose under the deed of trust. The trial court disagreed, and ruled that it lacked subject matter jurisdiction to consider Homeowners' defense. The court premised this decision on its conclusion that the defense raised by Homeowners was equitable rather than legal in nature, and thus outside the scope of review permitted by N.C. Gen. Stat. § 45-21.16. Accordingly, the trial court entered an Order to Allow Foreclosure Sale on 8 June 2012, in which it concluded that the conditions necessary for the Bank to foreclose had been met.

Homeowners filed timely notice of appeal to this Court on 18 June 2012. On 25 September 2012, the federal district court entered a Consent Preliminary Injunction Order in Homeowners' suit against the Bank. This injunction prohibited sale of Homeowners' residence until otherwise ordered by the federal court. On 18 February 2013, this Court entered a stay of proceedings in this appeal, pending (1) dissolution of the Consent Preliminary Injunction or (2) judgment, dismissal, or other final disposition of Respondent's suit against the Bank. On 12 June 2013, Homeowners notified this Court of the entry of a Joint Stipulation of Dismissal *with prejudice* of the federal suit.

## II. Jurisdiction & Standard of Review

As Homeowners appeal from the final judgment of a superior court, we have jurisdiction over their appeal of right. *See* N.C. Gen. Stat. § 7A–27(b) (2011). "Whether a trial court has subject-matter jurisdiction is a question of law, reviewed de novo on appeal." *McKoy v. McKoy*, 202 N.C. App. 509, 511, 689 S.E.2d 590, 592 (2010).

## III. Analysis

Homeowners argue on appeal that the trial court erred in concluding it lacked jurisdiction on the basis that Homeowners' defense to foreclosure is an equitable one, and thus outside the scope of review permitted by N.C. Gen. Stat. § 45-21.16. However we need not decide this issue, as the trial court would now be precluded from hearing Homeowners' defense because of the dismissal with prejudice of the federal suit and the doctrine of *res judicata*. Accordingly, we affirm the trial court's order on alternative grounds.

Under N.C. Gen. Stat. § 45-21.16(d), four elements must be established before the clerk can authorize a mortgagee or trustee to proceed with foreclosure by power of sale: " '(i) [a] valid debt of which the party seeking to foreclose is the holder, (ii) default, (iii) right to foreclose under the instrument, [and] (iv) notice to those entitled to such . . . .' "

**IN RE FORECLOSURE OF RAYNOR**

[229 N.C. App. 12 (2013)]

*In re Bass*, __ N.C. __, __, 738 S.E.2d 173, 175 (2013) (quoting N.C. Gen. Stat. § 45–21.16(d) (2011)) (alterations in original). The clerk's findings are appealable to the superior court for a hearing *de novo*; however, the superior court's authority is similarly limited to determining whether the criteria enumerated in N.C. Gen. Stat. § 45–21.16(d) have been satisfied. *Mosler v. Druid Hills Land Co.*, 199 N.C. App. 293, 295–96, 681 S.E.2d 456, 458 (2009). The superior court "has no equitable jurisdiction and cannot enjoin foreclosure upon any ground other than the ones stated in [N.C. Gen. Stat. § ] 45–21.16." *Matter of Helms*, 55 N.C. App. 68, 71–72, 284 S.E.2d 553, 555 (1981). Accordingly, the trial court must "declin[e] to address . . . argument[s] for equitable relief, as such an action would . . . exceed[ ] the superior court's permissible scope of review[.]" *Espinosa v. Martin*, 135 N.C. App. 305, 311, 520 S.E.2d 108, 112 (1999). Indeed, "[t]his Court has repeatedly held that equitable defenses may not be raised in a hearing pursuant to [Section] 45–21.16, but must instead be asserted in an action to enjoin the foreclosure sale under [N.C. Gen. Stat. §] 45–21.34." *In re Fortescue*, 75 N.C. App. 127, 131, 330 S.E.2d 219, 222 (1985) (citing *In re Watts*, 38 N.C. App. 90, 94, 247 S.E.2d 427, 429 (1978)).

Relying on the language in the deed of trust and note, Homeowners argued before the trial court that the Bank's compliance with HAMP regulations regarding modification was a contractual condition precedent to the substitute trustee's "right to foreclose under the instrument." N.C. Gen. Stat. § 45-21.16(d)(iii). The trial court disagreed with this characterization, and concluded that the defense raised by Homeowners ·was equitable in nature, and therefore outside of its jurisdiction. However even assuming, but without deciding, that Homeowners' defense falls within the ambit of a Section 45-21.16 proceeding, the trial court currently lacks jurisdiction to hear Homeowners' defense.

North Carolina's jurisprudence on foreclosure provides for dual track defenses to foreclosure under a power of sale. A homeowner may (1) appeal from an adverse ruling by the clerk of court to a superior court judge for *de novo* review of legal defenses and/or (2) file a separate civil action in superior court to seek injunctive relief from foreclosure on equitable grounds.[2]

---

2. For example, North Carolina courts have considered the following issues to be "legal" defenses falling within the ambit of a Section 45-21.16 proceeding, although the following list is not exhaustive: (1) whether or not the party seeking to foreclose has possession of the note and is thus "the holder of the debt," *Connolly v. Potts*, 63 N.C. App. 547, 306 S.E.2d 123 (1983), (2) sufficiency of both holder's and mortgagor's signatures, *In re Bass*, __ N.C. __, 738 S.E.2d 173 (holder); *Espinosa*, 135 N.C. App. 305, 520 S.E.2d

Homeowners availed themselves of both remedies in this matter. In their injunctive action, which the Bank removed to federal court, the parties litigated the specific issue of the Bank's failure to comply with HAMP. While the matter was pending in federal court, the Fourth Circuit acknowledged that mortgagors have no freestanding private right of action to sue for violations of the HAMP act. *See Spaulding*, 714 F.3d at 776 n.4.[3] Based upon this ruling and for other reasons satisfactory to the parties, Homeowners' complaint was dismissed with prejudice. Because this claim has been dismissed with prejudice in federal court, the specific issue of whether the bank violated HAMP regulations for purposes of *this lawsuit* has been decided.

"A final judgment, rendered on the merits by a court of competent jurisdiction, is conclusive as to the issues raised therein with respect to the parties and . . . constitutes a bar to all subsequent actions involving the same issues and parties." *Kabatnik v. Westminster Co.*, 63 N.C. App. 708, 711–12, 306 S.E.2d 513, 515 (1983). "In order for *res judicata* to apply, there must have been a prior adjudication on the merits of an action involving the same parties and issues as the action in which the defense of *res judicata* is asserted." *Id.* at 712, 306 S.E.2d at 515. For purposes of *res judicata*, a voluntary dismissal with prejudice is "a judgment on the merits." *Id. Res judicata* is applicable regardless of any differences in the manner in which the claims are asserted. *Id.*

After the trial court entered its order allowing foreclosure, Homeowners obtained a Preliminary Injunction from the federal court in its Section 45–21.34 suit preventing the Bank from foreclosing on Homeowners' residence. As noted above, Homeowners' suit sought a permanent injunction barring foreclosure on the basis of the Bank's alleged non-compliance with HUD regulations pertaining to modification of Homeowners' loan.

However, Homeowners have notified this Court of a Joint Stipulation of Dismissal with Prejudice in the federal suit. Therefore, even if we were

---

108 (mortgagor), (3) forgery, *In re Hudson*, 182 N.C. App. 499, 642 S.E.2d 485 (2007), (4) whether the subject property is covered by provisions of a putative deed of trust, *In re Michael Weinman Assocs. Gen. P'ship*, 333 N.C. 221, 424 S.E.2d 385 (1993), (5) whether holder has produced sufficient evidence of proper endorsement, *In re David A. Simpson, P.C.*, 211 N.C. App. 483, 711 S.E.2d 165 (2011), and (6) failure of consideration. *Foreclosure of Deed of Trust of Blue Ridge Holdings Ltd. P'ship*, 129 N.C. App. 534, 500 S.E.2d 446 (1998).

3. But see Judge Fox's recent opinion in *Robinson v. Deutsche Bank Nat'l Trust Co.*, 2013 WL 1452933 (E.D.N.C. April 9, 2013), suggesting that mortgagors may have a claim for judicial review under North Carolina's implied contractual duty of good faith and fair dealing.

to agree with Homeowners, and remand this case to the trial court for consideration of Homeowners' defense, the trial court would be barred from hearing their argument. As a dismissal with prejudice is a judgment on the merits for the purposes of *res judicata, Id.*, Homeowners may not raise arguments identical to those before the federal court again before the superior court. Accordingly, we affirm the order of the trial court on alternative grounds.

## IV. Conclusion

For the foregoing reasons, the order of the trial court is

AFFIRMED.

Judges STEELMAN and GEER concur.