IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-699

Filed 4 March 2026

Edgecombe County, No. 22CVS000522-320

BOBBY DALES, JR., Plaintiff,

v.

GARDNER-WEBB UNIVERSITY, Defendant.

Appeal by defendant from judgment entered 14 July 2022 by Judge John M. Dunlow in Edgecombe County Superior Court. Heard in the Court of Appeals 10 February 2026.

> *Kennedy, Kennedy, Kennedy & Kennedy, L.L.P., by Harvey L. Kennedy, and Harold L. Kennedy, III, for the plaintiff-appellant.*

> *Cranfill Sumner LLP, by Patrick H. Flanagan, Joseph R. Holguin, and Steven A. Bader, for the defendant-appellee.*

TYSON, Judge.

Bobby Dales, Jr. ("Plaintiff") appeals from order entered granting summary judgment to Gardner-Webb University ("Defendant"). We affirm.

## I. Background

Plaintiff attended Defendant from 2017 until he graduated in May 2021. He was a member of the varsity football team along with Quinton Jones, Keegan Smith, Ricardo Johnson, and James Ellis. Plaintiff's girlfriend at the time, Ashadan Forbes, shared an on-campus, female-only apartment at University Commons with Ashley

Robinson, Jones' girlfriend, Ciara Ashworth, Smith's girlfriend, and another female student. Robinson was a Resident Advisor (RA) at University Commons.

During the 2020-2021 winter break, Robinson left campus and gave her RA key to Jones, who stayed in the apartment over the break. Upon returning from break and finding Jones inside the apartment, Forbes contacted Robinson to voice her concerns about Jones' presence inside the female-only apartment. This led to a confrontation between Forbes, Robinson, and Jones on the afternoon of 15 January 2021, after Forbes had returned to the apartment. Forbes called Plaintiff to share what happened. Plaintiff then called Jones to resolve the issues.

That night, when Plaintiff and Forbes were eating dinner in Forbes' room, Robinson asked Forbes to attend a "roommate meeting" in the living room of the apartment. After approximately ten minutes, Robinson called Plaintiff into the living room, and after he indicated his intent to stay out of the meeting, Robinson then called Jones.

Jones entered the apartment shortly thereafter with a red cup in his hand, and in an aggressive manner asked, "what the problem is?" Because of Jones' behavior, Plaintiff put himself between Jones and Forbes. At this point, Jones physically attacked Plaintiff. Ashworth then called Smith, who arrived with Johnson and Ellis. The three men purportedly joined Jones in physically attacking Plaintiff. At one point during the fight, Jones put Plaintiff into a chokehold. The fight continued until

Jamari Brown, another football player, showed up and pulled Plaintiff's assailants off of him.

Forbes called Defendant's campus police, but the assailants had fled the scene before the officers arrived. While Officer J.E. Bluff took statements from Plaintiff and Forbes, Jessika Raduly, Defendant's Student Housing Manager, and James Parker, Defendant's Assistant Director of Student Conduct & Residence Education, also arrived at the apartment.

Plaintiff was bleeding from his lip but declined medical attention after Officer Bluff offered. Officer Bluff informed Plaintiff he could not remain at the apartment building for the rest of the night. Officer Bluff accompanied Raduly and Parker to the apartment where Plaintiff's assailants were to inform them they could not return to University Commons or another building for the rest of the night. After Officer Bluff left, Plaintiff sought medical treatment at the Atrium Health Cleveland Medical Center where he received stitches and a shot. Plaintiff and Forbes then spent the night at a nearby hotel.

An incident report was filed, and Parker, as the Chief Hearing Officer for student conduct, reviewed the report, Officer Bluff's report, witness statements, and a phone video of the altercation. On 20 January 2021, Plaintiff received an email from Parker describing purported violations of Defendant's Code of Conduct with which he was being charged. Parker also informed Plaintiff of a meeting scheduled for the following day to discuss the incident. After the meeting, Parker found Plaintiff

was responsible for assault as defined by Gardner-Webb's Code of Conduct. Plaintiff's disciplinary sanctions included a $300 fine and placement on disciplinary probation. Three of the other students involved in the incident were also disciplined.

Plaintiff appealed the initial decision and had an appeal hearing on 1 February 2021 with Lesley Villarose, the Vice President of Student Development and Dean of Students, at Gardner-Webb. Villarose upheld the discipline imposed by Parker, based upon her review of the incident and documentation. She issued a written outcome to Plaintiff on 4 February 2021. Plaintiff did not appeal or further challenge Villarose's decision. Plaintiff graduated from Defendant Gardner-Webb University in May 2021.

Plaintiff instituted this action in the Edgecombe County Superior Court on 14 July 2022 alleging battery, intentional infliction of emotional distress, and negligent intention of emotional distress. Plaintiff amended his complaint on 17 March 2023. Defendant filed a motion for summary judgment on 5 March 2025 and an amended motion for summary judgement on 18 April 2025. The trial court heard arguments on the motion on 28 April 2025.

The trial court granted Defendant's motion for summary judgment on 5 May 2025 for all claims. Plaintiff timely filed a notice of appeal on 8 May 2025.

## II. Jurisdiction

This Court has jurisdiction pursuant to N.C. Gen. Stat. § 7A-27(b) (2025).

## III. Standard of Review

- 4 -

North Carolina Rule of Civil Procedure 56(c) allows a moving party to obtain summary judgment upon demonstrating "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" show "there is no genuine issue as to any material fact," and they are "entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2025). "An issue is genuine if it can be supported by substantial evidence." *Baer v. Baer*, 294 N.C. App. 551, 558, 904 S.E.2d 815, 820 (2024) (quoting *Cox v. Cox*, 75 N.C. App. 354, 355, 330 S.E.2d 506, 507 (1985)).

"Summary judgment is a drastic measure and is rarely appropriate in negligence cases." *Rouse v. Pitt County Memorial Hospital*, 343 N.C. 186, 191, 470 S.E.2d 44, 47 (1996) (citation and internal quotation marks omitted). Summary judgment is not appropriate where matters of credibility and determining the weight of the evidence exist. *Moore v. Fieldcrest Mills, Inc.*, 296 N.C. 467, 470, 251 S.E.2d 419, 422 (1979) (citation omitted).

"The party moving for summary judgment bears the burden of establishing . . . there is no triable issue of material fact." *DeWitt v. Eveready Battery Co.*, 355 N.is no, 681, 565 S.E.2d 140, 146 (2002) (citation omitted). "This burden may be met by proving . . . an essential element of the opposing party's claim is non-extant, or by showing through discovery . . . the opposing party cannot produce evidence to support an essential element of his claim or cannot surmount an affirmative defense[,] which would bar the claim." *Id.* (citation and internal quotation marks omitted).

A defendant may show entitlement to summary judgment by: "(1) proving that an essential element of the plaintiff's case is nonexistent; (2) showing through discovery . . . plaintiff cannot produce evidence to support an essential element of his or her claim; or (3) showing . . . plaintiff cannot surmount an affirmative defense." *James v. Clark,* 118 N.C. App. 178, 181, 454 S.E.2d 826, 828 (1995) (citation omitted).

"Once the party seeking summary judgment makes the required showing, the burden shifts to the nonmoving party to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, showing that he can at least establish a *prima facie* case at trial." *Gaunt v. Pittaway,* 139 N.C. App. 778, 784-85, 534 S.E.2d 660, 664 (2000). "A plaintiff is required to offer legal evidence tending to establish beyond mere speculation or conjecture every essential element of negligence, and upon failure to do so, summary judgment is proper." *Asher v. Honeycutt*, 284 N.C. App. 583, 589, 876 S.E.2d 660, 666 (2022) (citation and internal quotation marks omitted).

An order granting summary judgment is reviewed *de novo* on appeal. *Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 470, 597 S.E.2d 674, 693 (2004).

## IV. Defendant's Legal Duty to Plaintiff

Plaintiff argues the trial court erred in granting Defendant's motion for summary judgment. Plaintiff relies upon *Davidson v. Univ. of N.C. at Chapel Hill*, 142 N.C. App 544, 552, 543 S.E.2d 920, 925, (2001) and two persuasive authorities from foreign jurisdictions, *Kleinknecht v. Gettysburg College*, 989 F.2d 1360 (3d Cir. 1993) and *Pinson v. State*, 1995 WL 739820 (Tenn. App. 1995), to support his

argument defendant owed him a duty of care based on a special relationship between himself and Defendant-Gardner-Webb University.

"Whether a defendant owes a plaintiff a duty of care is a question of law." *Davidson*, 142 N.C. App at 552, 543 S.E.2d at 925 (citing *Pinnix v. Toomey*, 242 N.C. 358, 362, 87 S.E.2d 893, 897 (1955)).

Plaintiff's reliance on these cases is misplaced. Each court, including this one, in *Davidson*, relied upon the fact the alleged negligent conduct occurred during the plaintiff's participation in either a school-sponsored practice or event to establish a duty derived from a special relationship that existed. In *Davidson*, where the plaintiff was injured during a cheerleading stunt, this Court specified the holding was "based on the fact that plaintiff was injured *while practicing as part of a school-sponsored, intercollegiate team.*" *Id.* at 556, 543 S.E.2d at 928 (emphasis supplied).

While Plaintiff and the other team involved were student-athletes at Defendant, he was not injured while participating in a school or team-sponsored event. He was injured after hours inside a dormitory apartment. Plaintiff's factual circumstances are markedly different from these cases upon which he relies. In *Davidson*, this Court clearly stated, "that a university should not generally be the insurer of its students' safety, and . . . the student-university relationship, standing alone, does not constitute a special relationship giving rise to a duty of care." *Id.*

Plaintiff argues Defendant owed him a duty of care it created by Defendant's own disciplinary policies. This assertion is contrary to our prior holding in *Davidson*.

*Id.* Plaintiff further asserts he alleged sufficient facts based on ordinary principles of negligence. As in *Davidson*, "[a]ctionable negligence presupposes the existence of a legal relationship between parties by which the injured party is owed a duty by the other, and such duty must be imposed by law." *Id.* at 553, 543 S.E.2d at 926 (quoting *Pinnix*, 242 N.C. at 362, 87 S.E.2d at 897).

Nothing in either *Davidson*, *Kleinknecht* or *Pinson* compels a contrary outcome. Under *de novo* review, Defendant did not owe Plaintiff a legal duty to preclude summary judgment. Plaintiff's arguments are overruled.

## V. Agency-Principal Relationship

Plaintiff argues Defendant is liable to him based upon an agency relationship. Plaintiff asserts Defendant was the principal to the assailants by virtue of their status as members of the football team, who had signed a Student-Athlete Code of Conduct and Athletics Grant-in-Aid/Participation Agreements. Plaintiff's arguments are misplaced.

A principal-agent relationship arises upon two essential elements: "(1) authority, either express or implied, of the agent to act for the principal, and (2) the principal's control over the agent." *Harrold v. Dowd*, 149 N.C. App. 777, 785, 561 S.E.2d 914, 920 (2002) (citation omitted). While Defendant's Code of Conduct imposed potential sanctions and punishments for violations, Defendant did not direct, acquiesce, or have any authority over their actions. Plaintiff does not point to any language in either document which provides any authority and control. *Id.*

Plaintiff asserts Defendant ratified their conduct by not punishing a player for the attack on him to enable their claims for battery and intentional infliction of emotional distress. Ratification occurs when "the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him." *Espinosa v. Martin*, 135 N.C. App. 305, 308, 520 S.E.2d 108, 111 (1999) (citations and quotation marks omitted). Plaintiff points to the purported lack of punishment to a player to signify ratification. This action or inaction is not an act "done or professedly done" on Defendants' account. *Id.*

["R]atification requires: (1) that at the time of the act relied upon, the principal had full knowledge of all material facts relative to the unauthorized transaction, and (2) that the principal had signified his assent or his intent to ratify by word or by conduct which was inconsistent with an intent not to ratify." *Hendrix v. Town of W. Jefferson*, 273 N.C. App. 27, 35, 847 S.E.2d 903, 909 (2020) (citation omitted).

The individuals involved in the assault were not agents of Defendant and their conducts were investigated and acted upon. A different or lack of punishment alone does not arise to show ratification. Nowhere does any purported violation of National Collegiate Athletic Association or Defendant's own internal policies create an actionable breach of the duty of care. *Davidson*, 142 N.C. App. at 556, 543 S.E.2d at 928. We all agree Defendant did not owe a duty to protect Plaintiff from independent criminal acts. As such, a duty to Plaintiff to enact, in Plaintiff's opinion, an adequate

punishment on others does not exist. If there is no duty owed, no genuine issue of material fact exists. Plaintiff's arguments are overruled. *Id.*

## VI. Conclusion

Under *de novo* review, Defendant did not owe Plaintiff a legal duty to preclude summary judgment for purported intentional or negligent acts or omissions. Plaintiff also failed to forecast Defendant's potential liability based upon an agency relationship. Plaintiff's forecast of evidence fails to establish a genuine issue of material facts exists. The trial court properly granted summary judgment for Defendant on all claims. The order of the trial court is affirmed.

AFFIRMED

Judge ZACHARY concurs.

Judge HAMPSON concurring in part, dissenting in part, by separate opinion.

No. COA25-699 –*Dales v. Gardner-Webb Univ.*

HAMPSON, Judge, concurring in part, dissenting in part.

I fully concur in the Opinion of the Court that Summary Judgment in favor of Defendant was properly granted on the intentional torts of Intentional Infliction of Emotional Distress and Battery. The remaining negligence claim—Negligent Infliction of Emotional Distress (NIED)—however, requires separate analysis.

Plaintiff's NIED claim arises both from allegations Defendant: (1) had a "special relationship" with Plaintiff and failed to prevent the altercation; and (2) committed alleged failures and violations of policies in the subsequent investigation of the altercation. To the extent Plaintiff's NIED claim arises out of a claim of a "special relationship" imposing a duty on Defendant to prevent the altercation, here too Summary Judgment was properly granted for Defendant. *See generally Mynhardt v. Elon Univ.*, 220 N.C. App. 368, 376, 725 S.E.2d 632, 637 (2012). I concur in the Opinion of the Court in that regard, too.

However, in my view, there is a genuine question of fact remaining on the material issue of whether Defendant breached any duty owed to Plaintiff arising from its investigation and discipline of Plaintiff and that the resulting discipline imposed on Plaintiff foreseeably resulted in severe emotional distress. Plaintiff alleges and forecasts evidence Defendant violated various NCAA and University policies in its handling of the investigation into the altercation thereby breaching a duty owed to Plaintiff. On the other hand, Defendant has forecast evidence it acted appropriately and within the bounds of the standard of care in conducting its investigation. As

such, Summary Judgment was not proper on the NIED claim. *See Foster v. Crandell,* 181 N.C. App. 152, 169-70, 638 S.E.2d 526, 537-38 (2007).