IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-167

No. COA21-46

Filed 15 March 2022

Cabarrus County, No. 17-CVS-1864

TOWN OF MIDLAND, a North Carolina municipal corporation, Plaintiff,

v.

TONEY L. HARRELL, and T.L. HARRELL'S LAND DEVELOPMENT COMPANY, INC., a North Carolina business corporation, Defendants.

Appeal by Defendants from orders entered 17 August 2020 and 18 December 2020 by Judge Martin B. McGee in Cabarrus County Superior Court. Heard in the Court of Appeals 5 October 2021.

*Parker Poe Adams & Bernstein LLP, by Anthony Fox & La-Deidre D. Matthews, for Plaintiff-Appellee.*

*Scarbrough, Scarbrough & Trilling, PLLC, by James E. Scarbrough, for Defendants-Appellants.*

INMAN, Judge.

This is the second appeal arising from a dispute about substandard roads in a residential subdivision in the Town of Midland ("the Town") in Cabarrus County. Five years ago, this Court held that the subdivision's developers bore responsibility for repairing the roads subject to the Town's enforcement of road standards, and that only after those repairs were made would the Town assume responsibility to maintain

the roads. The developers still failed and refused to repair the roads and contested penalties and fees assessed against them by the Town. The Town sued and obtained relief from which the developers now appeal.

¶ 2 Defendants-Appellants, Harrell's Land Development Company, and its president, Toney L. Harrell (collectively "Developers"), developed a residential subdivision in Midland, NC. The claims brought by the Town against Developers in this case arise out of a notice of zoning violation—substandard maintenance of privately owned roads—previously upheld by this Court. *See In re Harrell v. Midland Bd. of Adjustment*, 251 N.C. App. 526, 796 S.E.2d 340, 2016 WL 7984233, at *7 (2016) (unpublished).

¶ 3 In this appeal, Developers argue the trial court erred in: (1) granting summary judgment to the Town on the issue of civil penalties for Developers' failure to repair the roads; (2) granting the Town a permanent mandatory injunction and order of abatement requiring Developers to repair and maintain the roads; and (3) denying Developers' motion for attorney's fees. After careful review, we affirm the trial court's entry of summary judgment in the Town's favor regarding civil penalties. We remand the mandatory permanent injunction and order of abatement for additional findings of fact and a more specific decree. Finally, we reverse the trial court's denial of Developers' motion for attorney's fees and remand for further proceedings.

## I. FACTUAL & PROCEDURAL BACKGROUND

¶ 4        We rely on our previous decision's summary of the underlying facts giving rise to the dispute between the Town and Developers over road maintenance in the development.

¶ 5        In 2004, while Developers were constructing Bethel Glen ("the development" or "the subdivision"), Developers filed an application with the North Carolina Department of Transportation ("NCDOT") requesting the agency "assume responsibility for the maintenance of the subdivision roads." *In re Harrell*, 2016 WL 7984233, at *1. A District Engineer with NCDOT, D. Ritchie Hearne ("Mr. Hearne"), relayed Developers' request to the Town, writing "I have informed [Developers] that acceptance of these roads would be a Town function under our normal policy . . . . The review of the street plans, inspection, and ultimate takeover of the roads would be the Town's responsibility" because the Town had incorporated earlier the same year. *Id.* In December 2005, Mr. Hearne advised the Town that he had again spoken with Developers and had informed Developers that NCDOT would not take responsibility for maintenance of the subdivision roads and that because the roads were within the Town's corporate limits, Developers would have to petition the Town for takeover. *Id.* In January 2006, the Town wrote to Mr. Hearne requesting a letter verifying that the roads were built to NCDOT standards. *Id.* The Town concluded, "When we receive this letter, we will proceed with adoption of said streets." *Id.* Nothing in the record reflected that the Town sent a copy of this letter to Developers or otherwise

represented directly to Developers that the Town would take over maintenance of the subdivision roads. *Id.*

¶ 6        In April 2006, Mr. Hearne wrote in response to the Town, in a letter copied to Developers, that damage to the subdivision roads in the course of construction had left them in need of repair, and that until all phases of the subdivision had been completed, NCDOT generally would not assume responsibility for their maintenance. *Id.* at \*2. This Court noted: "There is no indication [Developers] followed up with [the Town] in order to petition the Town to take over maintenance of the subdivision roads, or to check on the status of any process of taking over the subdivision roads that [the Town] might have initiated themselves." *Id.*

¶ 7        Beginning in 2012, after receiving complaints from residents about poor road conditions in the development, the Town asked Developers to repair the roads on at least three separate occasions. *Id.* at \*2-3. Despite a meeting and notice, Developers did not take corrective action to repair the roads. *Id.* at \*3.

¶ 8        On 18 March 2014, the Town's Zoning Administrator issued a notice of violation to Developers for failure to properly construct and maintain the roads in the development in violation of a local ordinance. The notice warned that if Developers did not repair deficiencies in the roads, the Town could assess penalties and deny permits for further construction in the development.

¶ 9      Developers appealed the notice of violation to the Town's Board of Adjustment, which affirmed the Zoning Administrator's decision. Developers unsuccessfully appealed to Superior Court, and then unsuccessfully appealed to this Court and the North Carolina Supreme Court. *In re Harrell*, 2016 WL 7984233, at *7, *disc. review denied by Harrell v. Midland Bd. of Adjustment*, 369 N.C. 751, 800 S.E.2d 418 (2017). This Court held the notice of violation was valid:

> The ordinance in question states that, until privately owned streets are accepted by the Town for public maintenance, "the developer shall be responsible for maintenance of those areas." Midland Development Ordinance, Article 16, § 16.1-8(A) (adopted 13 September 2011). It is undisputed that, at the time [the Town] filed the notice of violation, [the Town] had not taken over responsibility for maintenance of the subdivision roads.
>
> . . . .
>
> Once [the Town] received complaints from subdivision residents, investigated the complaints, and failed to reach an agreement with [Developers] for the needed repairs, [the Town] correctly sent [Developers] the notice of violation.

*Id.* at *5.

¶ 10      While the Developers' appeal was pending, on 14 October 2016, the Town's Zoning Administrator hand-delivered to Mr. Harrell a civil citation and a letter entitled "Bethel Glen Subdivision Streets and Covenants." It read:

> This letter is to inform you that, pursuant to Article 23 of the Midland Development Ordinance, specifically subsections 23.6-2 <u>Civil Penalties</u> and 23.6-3 <u>Denial of</u>

<u>Permit or Certificate</u>, the Town of Midland ("Midland") hereby assesses you civil penalties and will deny future permits and certificates based on your refusal to address inadequate street construction and inadequate maintenance of the streets within the Bethel Glen subdivision ("Development").

The citation assessed a penalty of $100 for the first violation and notified Developers that they would be assessed a penalty of $300 for a second violation and $500 for a third and all subsequent violations. The citation notified Developers that citations would continue "for each day the offense continues until the prohibited activity is ceased or abated."

¶ 11 By letter dated 22 December 2016, Developers' counsel notified the Zoning Administrator that Developers were appealing the civil citation to the Town's Board of Adjustment. The Zoning Administrator responded via e-mail: "This matter was appealed previously to the Board of Adjustment in 2014 . . . . You can't appeal something twice."

¶ 12 On 17 January 2017, the Zoning Administrator hand-delivered to Mr. Harrell another letter referencing "Demand for Payment & Notice of Legal Action." The letter notified Developers that they owed $18,900 in penalties, and if not paid within 30 days, the Town would file a civil action "for the collection of the penalties, attorney's fees, interest, court costs, and other such relief as permitted by law." The letter was delivered with a batch of civil citations dating from 9 December 2016 to 17 January

2017.

¶ 13        On 6 March 2017, the Zoning Administrator hand-delivered a second batch of civil citations to Mr. Harrell's residence for violations dating 18 January 2017 through 2 March 2017. On 13 April 2017, the Zoning Administrator delivered a third batch of citations for 3 March 2017 through 13 April 2017. And on 16 June 2017, she delivered a final batch of citations for 14 April 2017 through 15 June 2017.

¶ 14        In total, the Town issued 189 civil citations against Developers. Counsel for Developers sent letters to the Town asserting appeals from each and every citation.

¶ 15        On 22 June 2017, the Town filed a civil action seeking an order of abatement and mandatory injunction against Developers as well as collection of civil penalties, costs, and attorney's fees. The parties filed cross-motions for summary judgment in June 2018; the motions came on for hearing a year later in June 2019.

¶ 16        After the hearing but before the trial court entered an order, Developers filed a motion to dismiss the action for lack of subject matter jurisdiction because the Town had not properly authorized the filing of the complaint. The Town Council then adopted, more than two years after the complaint had been filed, a resolution retroactively authorizing the lawsuit.

¶ 17        On 17 August 2020, the trial court entered orders denying Developers' motion for summary judgment, allowing the Town's motions, and imposing a permanent injunction and an order of abatement. Developers filed notice of appeal from these

orders. Developers also filed a motion for relief from judgment on the same grounds as those presented in their motion to dismiss for lack of subject matter jurisdiction, which the trial court had not addressed. In addition, Developers filed a motion to stay the judgment and a motion for an award of attorney's fees pursuant to N.C. Gen. Stat. § 6-21.7 (2021), alleging that the Town had exceeded its "unambiguous limits on its authority" by imposing civil penalties on Developers while their appeal was pending, in violation of the automatic stay provided by N.C. Gen. Stat. 160A-388(b1)(6) (2017).

On 18 December 2020, the trial court entered an order noting that the Town had agreed to dismiss all civil penalties issued prior to the conclusion of Developers' pending appeal and denying any relief to Developers.

## II.  ANALYSIS

### A. Subject Matter Jurisdiction

Developers argue the trial court lacked subject matter jurisdiction to hear this action because the Town did not demonstrate it had standing. Specifically, Developers argue Midland's Town Council was required to adopt a resolution prior to the Town filing its complaint in this lawsuit, and in failing to do so until two years after the commencement of the suit, the Town did not have standing. We disagree.

"Whether a trial court has subject-matter jurisdiction is a question of law, reviewed de novo on appeal." *In re Foreclosure of a Deed of Trust Executed by Raynor*,

229 N.C. App. 12, 16, 748 S.E.2d 579, 583 (2013). Standing is required to confer subject matter jurisdiction upon a court, *Myers v. Baldwin*, 205 N.C. App. 696, 698, 698 S.E.2d 108, 109 (2010), and the complaining party bears the burden of proving standing, *Am. Woodland Indus., Inc. v. Tolson*, 155 N.C. App. 624, 627, 574 S.E.2d 55, 57 (2002).

¶ 21        As solely a creature of legislative charter, our General Statutes provide that a city or town may exercise its powers only as delegated from the General Assembly. *See* N.C. Gen. Stat. § 160A-4 (2021). A "[c]ity must follow the requirements of the statutes and [its] charter, and the ordinances and procedures it establishe[s]." *State ex rel. City of Albemarle v. Nance*, 266 N.C. App. 353, 361, 831 S.E.2d 605, 611 (2019), *disc. review denied*, 373 N.C. 585, 838 S.E.2d 182 (2020). A power or limitation "that is conferred or imposed by charter or general law without directions or restrictions as to how it is to be exercised or performed shall be carried into execution as provided *by ordinance or resolution of the city council*." N.C. Gen. Stat. § 160A-12 (2021) (emphasis added).

¶ 22        The power the Town seeks to exercise here is set out in the "general law" under Section 160A-175 of our General Statutes, which grants that the Town has the "power to impose fines and penalties for violation of its ordinances, and may secure injunctions and abatement orders to further insure compliance with its ordinances as provided by this section." *Id.* § 160A-175(a) (2021). Here, the Town seeks fines, a

mandatory injunction, and an order of abatement. The "general law" does not set out "directions or restrictions as to how it is to be exercised or performed," so the Town can exercise its corporate power "as provided by ordinance or resolution of the city council." *Id.* § 160A-12.

¶ 23 The relevant portions of the Town's ordinances are in our record on appeal. Article 16 of the ordinances governs "Subdivisions" and includes requirements for "Streets and utilities," "street design," and "street construction." Midland, N.C., Midland Dev. Ordinance, Art. 16, §§ 2-6, 2-7, 2-9. This Article includes a section for "Violations," which provides that "Violations of the provision of this section shall be subject to the enforcement and penalty provisions set forth in Article 23 of this Ordinance." *Id.*, Art. 16, § 1-7.

¶ 24 Article 23, entitled "Administration and Enforcement," describes the Town's Planning, Zoning & Subdivision Administrator as the "Enforcement Officer with the duty of administering and enforcing the provisions of this Ordinance." *Id.*, Art. 23, § 2-1. Article 23 further provides the steps and procedures of enforcement proceedings. Section 23.5-6, in particular, provides:

> If [an] owner or occupant of a property fails to comply with a Notice of Violation from which no appeal has been taken, or an order of Corrective Action following an appeal, the owner or occupant shall be subject to such remedies and penalties as may be provided for by state law and Section 23.6 (Remedies).

*Id.*, § 5-6. "If the owner or occupant fails to comply with the remedies and penalties prescribed, enforcement shall be sought through an order of a court of competent jurisdiction." *Id.* The remedies provided in Section 23.6 include injunctive relief such as an order of abatement or a mandatory injunction. *Id.*, § 6-1. Section 23.6-2 also authorizes assessment of civil penalties. *Id.*, § 6-2. In addition, under the Town's ordinances, when a fine has not been paid, "the matter shall be referred to legal counsel for institution of a civil action in the appropriate division of the General Courts of Justice for recovery of the civil penalty." *Id.*, Art. 23, § 7-6. The ordinance provides that the matter shall be referred to town counsel to file suit.

Thus, under our General Statutes, the Town carried out this enforcement action "as provided by ordinance or resolution of the city council." § 160A-12. The ordinances provide the authority of the Town's Zoning Administrator to "administer" and "enforce" the ordinances, and the ordinances specifically grant the authority for referral to legal counsel to institute a civil action. Midland, N.C., Midland Dev. Ordinance, Art. 23, §§ 2-1, 7-6. Based upon Midland's ordinances, Midland's Town Council was not required to adopt a resolution before the Town filed its complaint. Although the Town adopted a resolution two years after commencement of the suit, that resolution was not required to confer jurisdiction because Midland's ordinances alone granted the necessary authority.

Developers compare this case to our recent decision in *State ex rel. City of*

*Albemarle v. Nance*, 266 N.C. App. 353, 831 S.E.2d 605 (2019). The facts of that case are inapposite. In *Albemarle*, the City of Albemarle engaged outside counsel to file a nuisance action against a local hotel but not before its city council had adopted a resolution authorizing the suit. 266 N.C. App. at 360, 831 S.E.2d at 610. Pursuant to its ordinances, Albemarle City Council was required to adopt a resolution to bring suit through outside counsel. *Id.* at 361, 831 S.E.2d at 610-11 ("Albemarle's ordinances require that either the city attorney or outside counsel selected by the council prosecute this action. In order to bring suit through outside counsel, the city council must adopt a resolution.") (citing City of Albemarle, N.C., Code of Ordinances, Art. IV, § 4.3). Albemarle's ordinances further provided, "[City] Council may employ other legal counsel from time to time, in addition to the City Attorney, as may be necessary to handle adequately the legal affairs of the City." *Id.* at 359, 831 S.E.2d at 610 (citing City of Albemarle, N.C., Code of Ordinances, Art. IV, § 4.3). Because Albemarle did not follow our statutes and its own ordinances, this Court held Albemarle lacked standing to bring suit. *Id.* at 361, 831 S.E.2d at 611.

¶ 27        Contrary to Developers' argument, we do not interpret *Albemarle*'s holding to require that every time a municipality files suit it must first seek a resolution from its council. Instead, *Albemarle* reaffirms our statutory mandate that municipalities execute their authority pursuant to their own ordinances or by resolution of city council. *See* § 160A-12 (providing a municipality's statutory authority "shall be

carried into execution as provided by ordinance or resolution of the city council.").

¶ 28 Here, the Town filed suit pursuant to N.C. Gen. Stat. § 160A-175(e) (2021), which provides "the city may apply to the appropriate division of the General Court of Justice for a mandatory or prohibitory injunction and order of abatement[.]". Unlike the City of Albemarle's ordinances, the Town's ordinances contain specific authorization to bring suit to recover civil fines assessed for violation of its provisions and to seek injunctive relief. And unlike the ordinance in dispute in Albemarle, Section 23-7.6 of the Town's ordinances does not require approval by the Town's Council before filing suit and there is no issue relating to outside counsel in this case. Because the Town complied with its own ordinances in the execution of its municipal powers, we hold the trial court properly exercised jurisdiction over this matter.

¶ 29 Developers further rely on *Shearon Farms Townhome Owners Ass'n II, Inc. v. Shearon Farms Dev., LLC*, 272 N.C. App. 643, 847 S.E.2d 229 (2020) to argue that the Town Council's authorization of the initial filing two years later cannot remedy the Town's lack of standing or confer subject matter jurisdiction upon the Court. Surely, subject matter jurisdiction is determined by "the state of affairs existing at the time it is invoked." *Id.* at 655, 847 S.E.2d at 238 (citation omitted). However, in *Shearon Farms*, this Court rejected the homeowners' association's argument it had standing to bring suit because "[t]he affidavit that Shearon Farms sought to introduce into the trial record documented assignments that occurred after it commenced this

lawsuit." *Id.* As we have held, the Town acted within its authority to bring suit in this case—it did not require assignments of rights to causes of action or any other authorization to grant standing.

### B. Summary Judgment for the Town

¶ 30　　　　Developers argue the trial court erred in granting the Town's motion for summary judgment for civil penalties and denying Developers' motion for summary judgment. Again, we disagree.

¶ 31　　　　We review a trial court's orders for summary judgment *de novo*. *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008).

¶ 32　　　　Contrary to Developers' contention, the civil penalties imposed by the Zoning Administrator do not constitute a "final and binding order, requirement, or determination made in writing." N.C. Gen. Stat. § 160A-388(b1) (recodified as N.C. Gen. Stat. § 160D-705(b) (2021)). Instead, the civil penalties simply enforced the judgment finding a zoning violation, which Developers had previously appealed and this Court upheld five years ago. *See In re Harrell*, 251 N.C. App. 526, 796 S.E.2d 340, 2016 WL 7984233, at *7. As the Town's Zoning Administrator advised Developers five years ago, "You can't appeal something twice."

¶ 33　　　　Based on this Court's prior decision, the Town had the authority by local ordinance to issue civil penalties for Developers' failure to comply with that judgment:

> If the owner or occupant of a property *fails to comply with*

> *a Notice of Violation* from which no appeal has been taken, or an Order of Corrective Action following an appeal, the owner or occupant shall be subject to such remedies and penalties as may be provided for by state law and Section 23.6 (Remedies).  *If the owner or occupant fails to comply with the remedies and penalties prescribed, enforcement shall be sought* through an order of a court of competent jurisdiction.

Midland, N.C., Midland Dev. Ordinance, Art. 23, § 5-6 (emphasis added).  Article 23 of the Town's ordinances governs civil penalties:

> Any of the following shall be a violation of this Ordinance and *shall be subject to the enforcement remedies and penalties provided by this Article* and by state law[:] . . . [t]o erect, construct, reconstruct, alter, repair, convert, *maintain, or use any building or structure or to use any land in violation or contravention of this Ordinance*, or any other regulation made under the authority conferred thereby.

*Id.* § 3-4 (emphasis added).  The ordinance provides for appeal of a *notice of violation.* *Id.* § 5-3 ("Any owner or occupant who has received a Notice of Violation may appeal in writing the written decision of the *Planning, Zoning & Subdivision Administrator* to the Board of Adjustment." (emphasis in original)).  It does not, however, establish a right to appeal civil penalties.  *See Fort v. Cnty. of Cumberland*, 218 N.C. App. 401, 407-08, 721 S.E.2d 350, 355 (2012) ("[W]e find instructive this Court's use of the long-standing rule of statutory construction: '*expressio unius est exclusio alterius*,' meaning the expression of one thing is the exclusion of another." (citations omitted)).

¶ 34        Developers unsuccessfully appealed the judgment arising from the initial

zoning violation. Pursuant to the Town's ordinances, no other avenue was available to Developers to challenge the enforcement of that judgment in the form of civil penalties.[1] Perhaps Developers could have sought injunctive or other relief from the civil penalties through our courts; they did not. Instead, they apparently ignored the judgment and failed to comply with its terms.

¶ 35 For all these reasons, we hold the trial court did not err by awarding summary judgment for civil penalties in the Town's favor.

## C. *Order of Abatement & Mandatory Injunction*

¶ 36 Developers contend that even if the trial court had jurisdiction, the trial court's order granting a mandatory permanent injunction and order of abatement should be vacated because the orders did not comply with Rule 65(d) of the North Carolina Rules of Civil Procedure. We remand to the trial court for additional findings of fact and a more specific decree.

### 1. *Law of the Case*

¶ 37 Before we address Developers' challenge to the specific mandate of the trial

---

[1] Even if we were to classify the civil penalties assessed as a final judgment or order, which we do not, Developers did not properly appeal those penalties pursuant to the Town's ordinances. *See* Midland, N.C., Midland Dev. Ordinance, Art. 6, § 2-6(A)-(B) ("(A) The appeal shall be filed with the Midland Town Clerk on an application form provided by him/her and contain the information as required on the application form. (B) The appeal application shall be accompanied by a fee as established by the Town of Midland."). Instead of submitting the required appeal form to the Board of Adjustment with an accompanying filing fee, Developers sent a letter to the Zoning Administrator purporting to appeal the civil citations.

court's order, we address our dissenting colleague's assertion that Developers' obligation to maintain the subdivision roads has not yet been established. This question was settled by this Court's prior opinion on this issue, and we cannot revisit it.

¶ 38        The order of abatement seeks to enforce the notice of violation for Developers' failure to maintain the subdivision streets. This Court previously upheld the Town's notice of violation against Developers and concluded Developers have an "ongoing obligation to *maintain* the subdivision streets pursuant to [Town] ordinance." *In re Harrell*, 2016 WL 7984233, at *5 (emphasis added). This Court's prior determination that Developers, and not the Town, are obligated to maintain the subdivision roads until the Town has approved a petition by Developers to assume responsibility, is binding on our decision today. *See N.C. Nat'l Bank v. Va. Carolina Builders*, 307 N.C. 563, 567, 299 S.E.2d 629, 631-32 (1983) ("Once a panel of the Court of Appeals has decided a question in a given case that decision becomes the law of the case and governs other panels which may thereafter consider the case. Further, since the power of one panel of the Court of Appeals is equal to and coordinate with that of another, a succeeding panel of that court has no power to review the decision of another panel on the same question in the same case.").

¶ 39        The Town's past communication with Mr. Hearne about the street maintenance takeover process cannot relieve Developers of their obligation to

maintain the subdivision roads, as it has been previously determined by this Court on the same record relied upon by our dissenting colleague. Further, the record before us does not reflect that Developers have either officially petitioned the Town to adopt the maintenance of the streets in the development or alleged that the original land plats themselves may replace the adoption process pursuant to the Town's ordinance. "The scope of review on appeal is limited to issues so presented in the several briefs. Issues not presented and discussed in a party's brief are deemed abandoned." N.C. R. App. P. 28(a) (2021).

### 2. *Rule 65(d) Compliance*

¶ 40        We now turn to Developers' argument about the contents of the order.

¶ 41        We review a mandatory permanent injunction and order of abatement *de novo*. *Wilner v. Cedars of Chapel Hill, LLC*, 241 N.C. App. 389, 392, 773 S.E.2d 333, 336 (2015). When we review the evidence in injunction cases, "there is a presumption that the judgment entered below is correct, and the burden is upon [the] appellant to assign and show error." *W. Conf. of Original Free Will Baptists of N.C. v. Creech*, 256 N.C. 128, 140, 123 S.E.2d 619, 627 (1962) (citation omitted).

¶ 42        The Town sought a mandatory injunction and order of abatement pursuant to Section 160A-175(e) of our General Statutes, which is governed by Rule 65 of our Rules of Civil Procedure. § 160A-175(e) ("The action shall be governed in all respects by the laws and rules governing civil proceedings, including the Rules of Civil

Procedure in general and Rule 65 in particular.").  Rule 65(d) provides: "Every order granting an injunction . . . shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts enjoined or restrained[.]"  N.C. Gen. Stat. § 1A-1, Rule 65(d) (2021).  For the rule's reasonable detail requirement, the question is "whether the party enjoined can know from the language of the order itself, and without having to resort to other documents, exactly what the court is ordering it to do."  *Auto. Dealer Res., Inc. v. Occidental Life Ins. Co. of N.C.*, 15 N.C. App. 634, 641-42, 190 S.E.2d 729, 734 (1972).

¶ 43         The "acts enjoined" section of the trial court's order for mandatory injunction and abatement provides:

> 1. Within thirty calendar days of the entry of this order, [Developers] shall submit to the Town a proposed plan to bring the Bethel Glen streets into compliance with NCDOT standards ("Proposed Repair Plan").
>
> 2. [Developers]' Proposed Repair Plan shall be sealed and submitted by an engineer licensed in the State of North Carolina and approved by the Town Engineer.  The Town Engineer shall provide written approval, revisions, or rejection of the Proposed Repair Plan.  The Proposed Repair Plan shall be revised until the Town Engineer provides written approval.  The Proposed Repair Plan must be revised and approved within thirty calendar days of the date of submission.
>
> 3. [Developers] shall complete the repairs to the Bethel Glen streets within 180 calendar days of the date of the

Town Engineer's written approval of the Proposed Repair Plan.

4. Following completion of all required repairs, the Town Engineer shall inspect the repairs and determine whether the repairs have been completed to NCDOT standards.

5. Following completion of all required repairs in compliance with NCDOT standards, [Developers] shall continue to maintain the roads to the standards set forth by the NCDOT until the respective government agency takes over this responsibility.

Developers argue the trial court's reference to the "Proposed Repair Plan" as a not-yet-finalized "outside document" and the order's vagueness about which NCDOT standards must be met and what repairs must be made violate Rule 65(d), leaving Developers without clear direction about how to remedy the conditions of the roads in the subdivision.

¶ 44        The parties do not dispute the roads were constructed according to NCDOT standards. The parties also agree that, as part of the final plat approval process, Developers certified, on each of the nine plats in the development, that they would "maintain the roads to the standards set forth by the NCDOT until the respective government agency takes over this responsibility."

¶ 45        But, before the trial court and on appeal, Developers allege they do not know how to maintain or repair the development roads in compliance with NCDOT standards. The Town asserts the roads have not been maintained to meet NCDOT standards and must be repaired before the Town assumes responsibility for their

maintenance. The Town engineer's affidavit and report outline base failure, pavement settlement, pothole formation, and gutter and drainage issues. Mr. Hearne's inspection of the streets in 2006 also revealed that "there were parts of the streets, along with some possible curb and gutter sections, that needed repair." *In re Harrell*, 2016 WL 7984233, at *2. He further explained "generally [NC]DOT will not take over maintenance of any subdivision roads until the majority of homes in the subdivision are built and the developer must perform any needed repairs to the road infrastructure" because roads are "often damaged and broken by the construction traffic when the homes are being built." *Id.*

¶ 46    The record reveals the parties have a long history of disagreement about exactly *how* to bring the roads in compliance with NCDOT standards. The Town's engineer estimated the cost of necessary upgrades will be $833,775, while Developers' expert estimated the cost will be $214,935. In 2017, Developers tried, and failed, to bring the roads into compliance with NCDOT standards to the satisfaction of the Town engineer.

¶ 47    The trial court recognized this disagreement could give rise to "a disputed fact[,] . . . that [Developers] made an effort to correct these [roads] and they're now where they should be." The trial court failed to resolve this dispute. The trial court's order requires Developers "to submit to the Town a proposed plan to bring [the development] streets into compliance with NCDOT standards." As written,

Developers cannot know from the terms of the order itself "exactly what the court is ordering [them] to do," *Auto. Dealer Res., Inc.*, 15 N.C. App. at 642, 190 S.E.2d at 734, namely what NCDOT standards have not been met and what repairs Developers must make to bring the development roads into compliance. While the trial court may order that Developers draft a plan for repairs, outline a review process, and impose a timeline for the work, the order must also identify which NCDOT standards are at issue and what repairs are sufficient to bring the roads into compliance.

¶ 48 Accordingly, we remand the mandatory permanent injunction and order of abatement for the trial court to make further findings of fact identifying the specific NCDOT standards that Developers have failed to meet and to provide a specific decree for repairs necessary to bring the roads into compliance. In its discretion, the trial court may take additional evidence, including expert testimony, to assist in its determination.

### D. Attorney's Fees

¶ 49 Developers argue the trial court erred in denying their motion for attorney's fees incurred contesting penalties assessed during the pendency of the first appeal. We agree.

¶ 50 We review a trial court's decision to award mandatory attorney's fees *de novo*. *Willow Bend Homeowners Assoc., Inc. v. Robinson*, 192 N.C. App. 405, 418, 665 S.E.2d 570, 578 (2008).

¶ 51    Our General Statutes provide:

> In any action in which a city or county is a party, upon a
> finding by the court that the city or county violated a
> statute or case law setting forth unambiguous limits on its
> authority, the court shall award reasonable attorneys' fees
> and costs to the party who successfully challenged the city's
> or county's action.

§ 6-21.7.

¶ 52    While Developers' first appeal regarding the notice of violation was pending,
the Town assessed nearly 200 civil penalties against them from 14 October 2016 to 8
June 2017. At that time, our General Statutes provided: "An appeal of a notice of
violation or other enforcement order stays enforcement of the action appealed
from . . . ." N.C. Gen. Stat. § 160A-388(b1)(6) (2017). In July 2019, our legislature
adopted an amendment to "clarify and restate the intent of the existing law and apply
to ordinances adopted before, on, and after the effective date." S.L. 2019-111, S.B.
355, *An Act to Clarify, Consolidate, and Reorganize the Land-Use Regulatory Laws of
the State*, Part III, sec. 3.1 (July 11, 2019). Our General Assembly further amended
Section 160A-388(b1)(6) to expressly prohibit the accrual of fines while a zoning
enforcement action is pending. S.L. 2020-25, § 10 (recodified as § 160D-405(f) (2021)
("An appeal of a notice of violation or other enforcement order stays enforcement of
the action appealed from *and accrual of any fines assessed* during the pendency of the
appeal to the board of adjustment and any subsequent appeal in accordance with G.S.

160D–1402 or during the pendency of any civil proceeding authorized by law." (emphasis added))).

¶ 53 Our Supreme Court has explained, "A clarifying amendment, unlike an altering amendment, is one that does not change the substance of the law but instead gives further insight into the way in which the legislature intended the law to apply from its original enactment." *Ray v. N.C. Dep't of Transp.*, 366 N.C. 1, 9, 727 S.E.2d 675, 681 (2012) (citation omitted). The General Assembly's addition of the words, "and accrual of any fines assessed," to this statute further echoes the legislature's stated intent to clarify the meaning of the existing statute since its enactment. Thus, under both versions of the statute, the Town was not authorized to impose penalties between 14 October 2016 and 8 June 2017, while Developers' first lawsuit was on appeal.

¶ 54 Our attorney's fees statute provides fees shall be awarded when the trial court finds "that the city or county violated a statute or case law setting forth *unambiguous limits* on its authority." § 6-21.7 (emphasis added). The statute defines "unambiguous" to mean the "limits of authority are not reasonably susceptible to multiple constructions." *Id.* We are not persuaded by the Town's argument that the previous version of the statute, Section 160A-388(b1)(6), is ambiguous because it is "reasonably susceptible to multiple constructions." Section 160A-388(b1)(6) made it clear the Town could not enforce a violation against a party while that same party's

appeal of a notice of violation was pending. § 160A-388(b1)(6) (2017). We cannot comprehend a reading of the word enforcement to exclude the imposition of civil penalties, fines, or punishments otherwise. *See State v. Benton*, 276 N.C. 641, 658, 174 S.E.2d 793, 804 (1970) ("It is always presumed that the legislature acted with care and deliberation and with full knowledge of prior and existing law."). By its own account, the Town issued civil citations in order to enforce the notice of violation.

¶ 55 In its order denying Developers' motion for attorney's fees, the trial court found "that the Town did not run afoul of unambiguous limits on its authority in violation of [Section] 6-21.7." We disagree and hold that, applying both versions of the board of adjustment provision, the Town had "run afoul" of limits on its authority, so the trial court was required to award reasonable attorney's fees. § 6-21.7.

¶ 56 The Town's agreement to dismiss the penalties imposed upon Developers from 14 October 2016 to 8 June 2017 during the pendency of the first appeal does not relieve the Town of its liability for Developers' attorney's fees incurred contesting those penalties. We reverse the order denying Developers' motion and remand to the trial court to determine and make appropriate findings regarding what attorney's fees Developers reasonably incurred in challenging the civil penalties imposed during the pendency of their first appeal.

### III. CONCLUSION

¶ 57 For the reasons outlined above, we affirm the trial court's entry of summary

judgment in the Town's favor regarding civil penalties, but we remand the mandatory permanent injunction and order of abatement for additional findings of fact and a more specific decree. We reverse the trial court's denial of Developers' attorney's fees and remand for further proceedings not inconsistent with this opinion.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.

Chief Judge STROUD concurs.

Judge TYSON dissents in part and concurs in part.

TYSON, Judge, concurring in part and dissenting in part.

The claims brought by the Town against Harrell Builders in this appeal arise out of multiple notices of zoning violations asserting substandard construction and deferred repair and maintenance of subdivision streets. In a prior appeal, this Court held Harrell Builders bore responsibility for constructing the streets to NCDOT road standards at the time when that condition was agreed to and for the Town to assume responsibility to maintain the roads. *In re Harrell v. Midland Bd. of Adjustment*, 251 N.C. App. 526, 796 S.E.2d 340, 2016 WL 7984233 (2016) (unpublished), *disc. review denied,* 369 N.C. 751, 800 S.E.2d 418 (2017). The trial court's conclusions and holdings in its order are erroneous. I concur in part with the majority opinion and respectfully dissent in part.

## I. Background

Harrell Builders built Bethel Glen subdivision (the "Development") in 2003. Included on each plat is the following provision expressing its agreement to the condition: "I (we) hereby certify that I (we) will maintain the roads to the standards set forth by the North Carolina Department of Transportation until the respective governmental agency takes over this responsibility." *In re Harrell,* 2016 WL 7984233 *1 (emphasis supplied). Harrell Builders never agreed to any other conditions with the Town of Midland.

The following facts are taken from this Court's earlier opinion:

> Petitioners completed an application with the North

> Carolina Department of Transportation [NCDOT]
> requesting that [NCDOT] assume responsibility for the
> maintenance of the subdivision roads. By letter dated 28
> October 2004, D. Ritchie Hearne ("Hearne"), a District
> Engineer for [NCDOT], wrote the Town, stating that
> Petitioners "contacted my office regarding acceptance of
> the [subdivision roads]. I have informed [Petitioners] that
> acceptance of these roads would be a Town function under
> our normal policy . . . The review of the street plans,
> inspection, and ultimate takeover of the roads would be the
> Town's responsibility."

*In re Harrell,* 2016 WL 7984233 *1.

Hearne again contacted Harrell Builders to advise them he had spoken with Petitioners to notify them NCDOT was not responsible for the street maintenance because those streets were now located within the Town's corporate limits. *Id.* The Town responded by letter and stated it was "willing to take the [subdivision] streets ... into the Town with some verification from you. [We request] a letter from you stating that the roads ... are built to NCDOT standards. *When we receive this letter, we will proceed with adoption of said streets." Id.* (emphasis supplied). The Town is bound by this acceptance.

No record evidence shows the Town sent a copy of the 19 January 2006 letter to Harrell Builders. The Town hired an engineering firm to inspect the roads. It was alerted *via* email that certain repairs were needed in January 2006. The email stated:

> As you can see on the map, there were multipl[e]
> phases recorded over the past few years. According
> to my inspection, there are a number of items that

need to be fixed prior to the Town taking over the streets, i.e., settlement of pavement at utility ditches, manholes, storm drainage lines etc. According to the Town of Midland Subdivision Ordinance, Section 60-40-C-5, either the developer or a Homeowner's Association is responsible for *maintenance of the streets until they are accepted by [NCDOT]* or the Town. It appears that T.L. Harr[ell]'s Land Development Co. Inc. is responsible for the maintenance. How do you want to handle this?

I would assume that the Town would want the developer to make a formal request to the Town for acceptance of the streets. However, *this step could be omitted since these are already platted. Upon receiving the request, the Town would inspect the development and provide the developer with a list of items that need to be corrected.* Once these items are fixed to the Town's satisfaction, the Town Board could accept the streets for maintenance.

The Town responded to this email by stating, *inter alia,* that the Town's "concern (and it[']s obvious) is that with the continuing construction with both phases, there are heavy work vehicles in/out of the development daily adding wear and tear to the roads, etc." The only record evidence of the issue of taking over maintenance of the subdivision roads having been discussed by the Midland Town Council is from the minutes of a 14 February 2006 meeting. Following are the relevant minutes:

Mayor Pro Tem Page said our engineer inspected the roads and found discrepancies. He added that *the Town is still waiting on a letter from NCDOT verifying that the roads have been built to [NCDOT] standards.*

Mayor Pro Tem Page said that the Town needs to

talk with the developer on the discrepancies and future phase plans. He noted for Council that, even if the Town takes over the streets, there is a clause stating the developer is still responsible for the streets for 1 year after takeover. He ended by saying *the Town should take the streets in* after it gets a formal request from the developer to do so.

[Town] Engineer Jeff Moody said upon his inspection of the streets he found 15-18 places where ditches had settled including around manholes. Also there are places in roads that had been patched and were now in need of repair.

. . . .

[NCDOT Engineer] *Hearne responded to the Town's 19 January 2006 letter by letter dated 25 April 2006, in which he stated that "[t]o this point, the roads within [the] subdivision have been designed, built, and inspected according to NCDOT standards."* Hearne then went on to state that generally [NCDOT] will not take over maintenance of any subdivision roads until the majority of homes in the subdivision are built "and the developer must perform any needed repairs to the road infrastructure." Hearne stated he had inspected the subdivision streets and there were parts of the streets, along with some possible curb and gutter sections, that needed repair. Hearne explained that "[i]t is often damaged and broken by the construction traffic when the homes are being built. There appears to be at least one more phase of construction to complete the subdivision." Hearne's 25 April 2006 letter indicated that a copy of the letter was sent to [Harrell Builders].

*In re Harrell*, 2016 WL 7984233 *2 (emphasis supplied). The record does not show

Harrell had agreed to be "responsible for the streets for 1 year after takeover" or that

"the Town . . . inspect[ed] the development and provide[d] the developer with a list of items that need to be corrected." *Id.*

¶ 63    Eight years after construction of the subdivision and beginning in 2011, the Town demanded Harrell Builders <u>*to repair*</u> *the streets* after receiving complaints from residents about street conditions within the development. On 18 March 2014, the Town's Zoning Administrator issued a notice of violation to Harrell Builders for failure to properly construct and maintain the roads in the development in violation of a local ordinance. The notice warned that if Harrell Builders did not repair deficiencies in the roads, the Town could enforce the local ordinance by, among other things, assessing penalties and denying permits for any further construction in the development.

¶ 64    Harrell Builders appealed the notice of violation to the Town's Board of Adjustment, which affirmed the zoning administrator's decision. Harrell Builders appealed to superior court, and then unsuccessfully appealed to this Court, which failed to address the underlying issue that is now before us. Harrell Builders sought discretionary review before the Supreme Court of North Carolina. *See In re Harrell,* 2016 WL 7984233 *7.

¶ 65    While the earlier appeal was pending, the Town's Zoning Administrator hand-delivered to Mr. Harrell a civil citation and a letter entitled "Bethel Glen Subdivision Streets and Covenants" on 14 October 2016. It read:

> This letter is to inform you that, pursuant to Article 23 of the Midland Development Ordinance, specifically subsections 23.6-2 Civil Penalties and 23.6-3 Denial of Permit or Certification, the Town of Midland . . . hereby assesses you civil penalties and will deny future permits and certificates based on your refusal to address inadequate street construction and inadequate maintenance of the streets within the Bethel Glen subdivision[.]

¶ 66 The citation assessed a purported penalty of $100 for the first violation and notified Harrell Builders it would be assessed a penalty of $300 for a second violation and $500 for a third and all subsequent violations. The citation notified Harrell Builders that citations would continue "for each day the offense continues until the prohibited activity is ceased or abated."

¶ 67 By letter dated 22 December 2016, Harrell Builders' counsel notified the Zoning Administrator that Harrell Builders were appealing the civil citation to the Town's Board of Adjustment. Notwithstanding that each citation asserted a new violation, the Zoning Administrator responded via e-mail: "This matter was appealed previously to the Board of Adjustment in 2014 . . . . You can't appeal something twice."

¶ 68 The Zoning Administrator hand-delivered another letter referencing "Demand for Payment & Notice of Legal Action" to Mr. Harrell on 17 January 2017. That letter notified Harrell Builders they owed a purported $18,900 in penalties with a note the Town would file a civil action if not paid within 30 days.

¶ 69    The Zoning Administrator continued the *seriatim* citations with a second, third and fourth batch to Mr. Harrell's residence for purported violations.  The Town issued 189 civil citations against Harrell Builders in total.  Harrell Builders appealed each citation.

¶ 70    The Town filed a civil action seeking an order of abatement and mandatory injunction against Harrell Builders on 22 June 2017.  Harrell Builders filed a motion to dismiss the action for lack of subject matter jurisdiction, asserting a statutory amendment had invalidated the accrued civil penalties assessed by the Town.

¶ 71    Harrell Builders' motion also alleged the Town had not properly authorized the filing of the complaint by resolution of the Town Council, as statutorily required. *See* N.C. Gen. Stat. § 160D-405(b),(d) (2021).   The Town Council then adopted a resolution, purporting to retroactively authorize the filing of the complaint (*more than two years* after the complaint had been filed).

¶ 72    The trial court entered orders denying Harrell Builders' motion for summary judgment, allowing the Town's motions, and imposing a permanent injunction and an order of abatement on 17 August 2020.  Harrell Builders appealed.

¶ 73    Harrell Builders filed a motion for relief from judgment on the same grounds as those presented in their motion to dismiss for lack of subject matter jurisdiction, which the trial court had not addressed.

¶ 74    The trial court entered an order noting that the Town had dismissed all civil

penalties issued prior to the conclusion of Harrell Builders' pending appeal and denying further relief to Harrell Builders on 18 December 2020. Harrell Builders appeal.

## II. Subject Matter Jurisdiction

Harrell Builders argue the trial court lacked subject matter jurisdiction to hear this matter because the Town failed to show standing when it filed its complaint. Harrell Builders argue the Town did not have standing because no resolution was adopted until two years after the commencement of the suit. I agree.

### A. Standard of Review

"Whether a trial court has subject matter jurisdiction is a question of law, reviewed de novo on appeal." *In re Foreclosure of a Deed of Trust Executed by Raynor*, 229 N.C. App. 12, 16, 748 S.E.2d 579, 583 (2013). Standing is required to confer subject matter jurisdiction upon a court. *Myers v. Baldwin*, 205 N.C. App. 696, 698, 698 S.E.2d 108, 109 (2010). The complaining party bears the burden of proving standing. *American Woodland Indus. v. Tolson*, 155 N.C. App. 624, 627, 574 S.E.2d 55, 57 (2002).

### B. N.C. Gen. Stat. § 160A-12

A "[c]ity must follow the requirements of the statutes and [its] charter, and the ordinances and procedures it establishe[s]." *State EX REL. City of Albemarle v. Nance*, 266 N.C. App. 353, 361, 831 S.E.2d 605, 611 (2019), *disc. review denied*, 373 N.C. 585,

838 S.E.2d 182 (2020). A power or limitation "that is conferred or imposed by charter or general law without directions or restrictions as to how it is to be exercised or performed shall be carried into execution *as provided by ordinance or resolution of the city council.*" N.C. Gen. Stat. § 160A-12 (2021) (emphasis supplied).

¶ 78    As the majority opinion notes, in *City of Albemarle*, the City Council was required to adopt a resolution to bring suit through outside counsel, pursuant to its own ordinances. *City of Albemarle,* 266 N.C. App at 361, 831 S.E.2d at 610-11. The city manager involved outside counsel prior to Albemarle's adoption of this new resolution. *Id*. at 354, 831 N.E.2d at 607. Because Albemarle had failed to follow our statutes and its own ordinances, this Court held Albemarle lacked standing to bring suit. *Id*. at 361, 831 S.E.2d at 611.

¶ 79    This Court held subject matter jurisdiction is determined by "the state of affairs existing at the time it is invoked." *Shearon Farms Townhome Owners Ass'n II, Inc. v. Shearon Farms Dev., LLC*, 272 N.C. App. 643, 655, 847 S.E.2d 229, 238 (2020) (citation omitted). In *Shearon Farms*, this Court rejected the homeowners' association's standing because "[t]he affidavit that Shearon Farms sought to introduce into the trial record documented assignments that occurred *after* it commenced this lawsuit." *Id.*

¶ 80    Harrell Builders argue the Town Council's resolution of authorization of the initial filing two years *after* the fact cannot remedy the Town's lack of standing or

does not relate back to confer subject matter jurisdiction upon the Court. *See id.* I agree and vote to vacate the trial court's award of summary judgment for the Town. *City of Albemarle*, 266 N.C. App. at 361, 831 S.E.2d at 611.

### III. NCDOT Standards

¶ 81 The parties disagree about Harrell Builders' compliance with NCDOT standards at the time the streets were completed. Those standards must be reviewed and applied objectively and under the standards agreed to by the parties and that are in effect at the time the condition was imposed and agreed to.

¶ 82 An applicant that accepts and enjoys the benefits of a permit may be estopped from challenging the rules of the permit or the conditions imposed. *Goforth Properties, Inc. v. Town of Chapel* Hill, 71 N.C. App. 771, 773, 323 S.E.2d 427, 429 (1984). N.C. Gen. Stat. § 160A-393.2 provides an important clarification and limitation on this estoppel. If the applicant did not expressly consent to the condition in writing, or if the condition is altered or enlarged, and the applicant is challenging the unconsented to condition, then the applicant may proceed with the development and the local government may not assert the defense of estoppel against the applicant. N.C. Gen. Stat. § 160A-393.2 (2019) (repealed effective January 1, 2021 and recodified in N.C. Gen. Stat. § 160D-1403.2 (2021) by Session Laws 2019-111, s 2.3, as amended by Session Laws 2020-3, s. 4.33(a), and Session Laws 2020-25, s. 51(a), (b), (d), effective June 19, 2020). This statute requires local governments to

ensure notice to and obtain written consent from the applicant for all imposed conditions. *Id.*

¶ 83    The Town's engineer now estimates the cost of "necessary upgrades" to be $833,775, while Harrell Builders' expert engineer offered a much lower figure of $214,935. Harrell Builders originally built the streets according to agreed-to NCDOT standards and worked to bring the roads into compliance therewith. What repairs would objectively satisfy NCDOT standards at the time of construction is entirely relevant to the form and scope requirements of Rule 65(d). *See* N.C. Gen. Stat. § 1A-1, 65 (2021).

¶ 84    The terms of the order appealed from rely entirely on the Town's engineer's subjective determination of current Town of Midland ordinances, and not the NCDOT objective standards Harrell Builders agreed to, which were in effect at the time of completion. Harrell Builders cannot know "exactly what the court is ordering it to do." *Resources, Inc. v. Insurance Co.*, 15 N.C. App. 634, 642, 190 S.E.2d 729, 734 (1972).

¶ 85    Per the order, Harrell Builders must submit a repair plan, following specific criteria, for review by the Town's engineer within thirty days of the order. The order mandates a timeline for subsequent approvals, revisions, and rejections of the plan, and a process for resolving potential disagreements about them. It further requires the roads be repaired to the "subjective satisfaction of the Town's engineer." Harrell

Builders never agreed to be bound to this condition and are not estopped from doing so now. *Goforth Properties,* 71 N.C. App. at 773, 323 S.E.2d at 429; N.C. Gen. Stat. § 160D-1403.2.

¶ 86        The trial court cannot enlarge nor delegate to the Town's subjective discretion whether Harrell Builders satisfied the condition it expressly agreed to at the time the plats were recorded: "I (we) hereby certify that I (we) will maintain the roads to the standards set forth by the North Carolina Department of Transportation until the respective governmental agency takes over this responsibility." We all agree the order erroneously leaves room for "misunderstanding" or "confusion," as Harrell Builders allege.

¶ 87        Harrell Builders rely upon *Resources, Inc. v. Insurance Co.,* 15 N.C. App. 634, 190 S.E.2d 729. In that case, the trial court entered a preliminary injunction enjoining a party from refusing to perform its obligations under a contract. *Id.* at 638, 190 S.E.2d at 732. This Court explained the "[d]efendant cannot insist now that the court speak with more clarity than did plaintiff and defendant in establishing the relationship which the court now seeks to preserve." *Id.* at 641, 190 S.E.2d at 734.

¶ 88        The first appeal addressed a separate issue from whether the streets were built to NCDOT standards at the time of construction. "The general purpose of the [NCDOT] is to provide for the necessary planning, construction, maintenance, and operation of an integrated statewide transportation system for the economical and

safe transportation of people and goods as provided for by law."  N.C. Gen. Stat. § 143B-346 (2021).

¶ 89        A road can be initially built to NCDOT design and construction standards, but not be so later maintained.  The streets develop potholes or other deficiencies, through normal wear or use, which need to be repaired.  A road can be built to non-NCDOT standards and be maintained in perfect condition or deteriorate into poor condition.

¶ 90        It appears neither the Town nor the trial court understood this distinction from the beginning.  This helps to explain the reason for the big difference in the party's engineers' estimates of costs to repair the roads.

¶ 91        An estimate to bring the streets to NCDOT standards at the time they were built is wholly different from an estimate to "repair" any current defects years after the construction.  The mandatory injunction means for Harrell Builders to bring to NCDOT standards, whatever they were, to repair.

¶ 92        What is clear and undisputed under the facts is the Town wrote NCDOT engineer Hearne on 19 January 2006 stating that the Town was "'willing to take the [subdivision] streets ... into the Town with some verification from you. [We request] a letter from you stating that the roads ... are built to NCDOT standards. *When we receive this letter, <u>we will proceed</u> with adoption of said streets.*'"  *In re Harrell*, 2016 WL 7984233 *1.

¶ 93        In response, Hearne certified to the Town on 25 April 2006, that *"[t]o this point, the roads within [the] subdivision have been designed, built, and inspected according to NCDOT standards."*  *In re Harrell,* 2016 WL 7984233 *2 (emphasis supplied).  The facts also show Harrell Builders had petitioned for acceptance as required and was provided a copy of Hearne's letter.  *Id.*

¶ 94        The real issue appears to be who is responsible for the repairs and maintenance for the normal wear and tear to the streets in Bethel Glen subdivision *since* Hearne's letter dated 25 April 2006.  If repairs were needed to meet NCDOT standards *on that date*, those would be Harrell Builders' responsibility.  The Town had expressly agreed to be bound by Hearne's determination of Harrell Builders' compliance with NCDOT standards, which he certified, and to accept maintenance of the streets.  The record does not show "the Town . . . inspect[ed] the development and provide[d] the developer with a list of items that need[ed] to be corrected," until over eight years later.  *In re Harrell*, 2016 WL 7984233 *2.

¶ 95        The Town has collected *ad valorem* taxes from Harrell Builders and the property owners of Bethel Glen subdivision since bringing the subdivision into the Town's limits.  The Town cannot now shirk its maintenance and repair obligations for normal wear and tear to the streets and shift them onto Harrell Builders.  Those obligations and costs are rightfully the Town's responsibility.

If the trial court proposes to enter a mandatory injunction requiring "NCDOT standards," in effect at the time of construction, which is all Harrell Builders agreed to provide, we all agree the trial court on remand must objectively say what they were in this particular case. The trial court's order is entirely too vague and leaves the matter entirely within the Town engineer's subjective discretion.

## IV. Attorney's Fees

Harrell Builders argue the trial court erred in denying their motion for attorney's fees incurred contesting penalties assessed during the pendency of the first appeal. We all agree the Town's agreement to dismiss the penalties illegally imposed upon Harrell Builders from 14 October 2016 to 8 June 2017 during the pendency of the first appeal does not relieve the Town of its liability for Harrell Builders' attorney's fees incurred in contesting those additional unlawful notices and penalties. The Town grossly, deliberately, and unambiguously exceeded the limits of its authority. The trial court is required to award Harrell Builders' reasonable attorney's fees. N.C. Gen. Stat. § 6-21.7(2021).

The order denying Harrell Builders' motion is properly reversed and remanded to the superior court to make appropriate findings and conclusions regarding what attorney's fees Harrell Builders reasonably incurred in challenging the *seriatim* civil penalties wrongfully imposed during the pendency of their first appeal.

## V. Conclusion

I vote to vacate in part and reverse in part the trial court's award of summary judgment. The trial court's mandatory injunction and order of abatement and the trial court's denial of Harrell Builders' attorney's fees are properly vacated, reversed, and remanded for further proceedings. I concur in part and respectfully dissent in part.